490 F.2d 400
 6 Fair Empl.Prac.Cas. 1206, 6 Empl. Prac.
Dec. P 8969
The GUARDIANS ASSOCIATION OF the NEW YORK CITY POLICE
DEPARTMENT, INC., The Hispanic Society of the New
York City Police Department, Inc., et
al., Plaintiffs-Appellants,
v.
CIVIL SERVICE COMMISSION OF the CITY OF NEW YORK et al.,
Defendants-Appellees, and Patrolmen's Benevolent
Association et al.,
Intervenors-Defendants-Appellees.
 No. 241, Docket 73-2083.
 United States Court of Appeals, Second Circuit.
 Argued Sept. 14, 1973.
Decided Nov. 21, 1973.
 
 Christopher Crowley, New York City (Jack, Greenberg, Elizabeth B. Du Bois, and Kenneth Kimerling, New York City, of counsel), for plaintiffs-appellants.
 Paula J. Omansky, New York City (Norman Redlich, Corp. Counsel, City of New York, and Frances E. Loren, New York City, of counsel), for defendants-appellees.
 Phillips, Nizer, Benjamin, Krim & Ballon, New York City (Stuart Linnick, New York City, of counsel), and Kaye, Scholer, Fierman, Hays & Handler, New York City (Seymour Goldstein, New York City, of counsel), for intervenors-defendants-appellees.
 Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Like Vulcan Society v. Civil Service Comm'n, this day decided, this action was brought in the District Court for the Southern District of New York under the Civil Rights Act, 42 U.S.C. 1983 and its jurisdictional implementation, 28 U.S.C. 1343(3). Plaintiffs here are two organizations representing black and Hispanic members of the New York City Police Department, several minority policemen who have unsuccessfully sought promotion, and several minority applicants who have been denied appointment to the force. The defendants are the Civil Service Commission of the City of New York, the City's Department of Personnel, the Police Department, individual civil service commissioners, and former Police Commissioner Murphy, hereafter referred to as the municipal defendants. Three police benevolent associations and various non-minority individuals awaiting promotion or appointment to the Department were permitted to intervene on the side of defendants. As in Vulcan Society, plaintiffs alleged that existing entry level and promotional examinations had a racially disproportionate impact, were improperly prepared, and were not job-related.
 
 
 2
 When the action was commenced on March 3, 1972, New York City was not hiring new policemen nor planning any new examinations. Since there appeared to be no urgency, it was agreed that the City would have the New York City Rand Institute (Rand) conduct a survey of the two most recent entry examinations, the second of which was held in 1970, to determine their racial impact. This agreement was conditioned on plaintiffs' undertaking not to seek injunctive relief while the Rand study was underway and the job freeze remained in effect. In January 1973 the freeze was lifted, and the City resumed hiring policemen from the eligibility lists; interim results of the Rand survey became available shortly thereafter. At about the same time, the City announced plans for a new patrolman's examination, to be given before January 1, 1974.
 
 
 3
 Late in March, plaintiffs moved for a preliminary injunction against continued appointments from current eligibility lists and against the use of inadequate methods to prepare any future examinations. Before decision, the final version of the Rand Report became available and was submitted to the district court. The Report confirmed plaintiffs' contention that the entry examinations had had a racially disproportionate impact. Plaintiffs also submitted affidavits and the results of discovery tending to show that the past examinations were not job-related and that the new one might not cure the defects.
 
 
 4
 As to the past examinations, the municipal defendants did not answer on the merits, but argued that the eligibility lists from those tests would soon be exhausted and that the public interest required that new policemen continue to be appointed. As to the new examination, the defendants alleged that it would be prepared in compliance with the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e to 2000e-17, now applicable to municipalities by virtue of 86 Stat. 103 (1972), and in accordance with the Equal Employment Opportunity Commission's Guidelines on Employee Selection Procedures, 29 C.F.R. 1607.1-1607.14. /1/
 
 
 5
 On July 16, 1973, Judge Ryan denied the motion for a temporary injunction in a short opinion. He assumed that plaintiffs had made the showing of racially disproportionate impact needed to put upon the municipal defendants the burden of establishing the job-relatedness of the past examinations. Despite the defendants' failure to present any evidence on the subject, he thought that resolution of this factual issue should await trial on the merits.[2] What was decisive for him was that 'It affirmatively appears that all on existing lists, including minorities, will be appointed at the latest by early fall of 1973, and at that time, the existing lists will be depleted.' Judge Ryan also denied the plaintiffs' request for injunctive relief as to future examinations, finding that in view of the City's efforts to cure the alleged flaws in its past tests, there was 'clearly no basis for injunctive relief at this time.'
 
 
 6
 Plaintiffs promptly appealed. They sought from a judge of this court an injunction pending appeal and an expedited appeal. The former request was denied; the latter granted. We heard the appeal on September 14, 1973, but, because of its close relationship with that in Vulcan Society, determined to consider and decide the two cases together.
 
 
 7
 Defendants' argument that a preliminary injunction cannot be issued because they have not yet had an evidentiary hearing on the merits is misconceived. Although normally a court should hold some form of evidentiary hearing prior to issuing a preliminary injunction when there is a dispute concerning the facts, see SEC v. Frank, 388 F.2d 486, 490-493 (2 Cir. 1968); 7 Moore, Federal Practice P65.04(3), a defendant cannot block issuance of an injunction simply by refusing to submit evidence on contested fact issues. To be sure, very little may suffice; an affidavit of a competent expert would ordinarily be enough to call for an evidentiary hearing, such as Judge Weinfeld conducted in Vulcan Society, even on an application for interlocutory relief. See Cerruti, Inc. v. McCrory Corp., 438 F.2d 281, 284 (2 Cir. 1971); Carter-Wallace Pharmacal Co. v. Davis-Edwards Pharmacal Co., 443 F.2d 867, 872 n.5 (2 Cir. 1971). But here there was none.
 
 
 8
 Although we reject this basis for denying relief, we affirm the order of the district court on a different ground. Judge Ryan was confronted with a condition, not a theory. In contrast to Vulcan Society, where many blacks and Hispanics who passed the examination might be denied appointment because of their low grades in the absence of interim relief, here it appeared that all who passed the examinations were assured of rather speedy appointment. There would have been little use in the court's devoting days of much needed time to umpiring a battle of experts concerning the job-relatedness of examinations whose lists were expected to be approaching exhaustion.
 
 
 9
 An affidavit by Police Commissioner Cawley submitted in response to a request made by us at oral argument shows that the judge's expectations were well-founded. Existing lists will have been exhausted before this opinion is filed. Although a new examination will be held on December 15, 1973, the earliest possible date of appointments therefrom is June 1974. Meanwhile the only available sources of new policemen will be lists of the New York City Transit Authority and the New York City Housing Authority police, which the Civil Service Commission has made available, and even these may not be adequate. While the affidavit does not disclose the ethnic composition of the eligibles remaining on these lists, it appears that 59% Of the 'protective service workers' employed by the Housing Authority and 27% Of the Transit Authority patrolmen are blacks or Hispanics. In view of all this we cannot say that the refusal to grant a temporary injunction against appointments from the old examination lists was an abuse of discretion.
 
 
 10
 The remaining issue is whether the court erred in not making directions with respect to the new examination. The affidavit of plaintiffs' expert alleged that defendants' admissions in discovery showed that they had not made proper job evaluations for the new examinations; that the new examination was being prepared on the basis of 'rational validation' rather than predictive or concurrent validation;[3] and that the former is not acceptalbe under the EEOC Guidelines. The court dismissed this by saying that 'When these new tests are promulgated, opportunity will be afforded plaintiffs to assert any objection they have.' Plaintiffs counter that it would be better to settle such matters before rather than after. Sharing the views expressed by Judge Coffin on a similar problem in Castro v. Beecher, 459 F.2d 725, 737-738 (1 Cir. 1972), we think the district court would have done well to direct that the municipal defendants should disclose the proposed examination to plaintiffs' counsel and expert, under an appropriate protective order, and afford them an opportunity to advance constructive criticisms, which the defendants should have carefully considered, without obligation to accept. We made that suggestion at argument. Although the time may now be too late, we think it desirable to instruct the district court to make such a direction now.
 
 
 11
 The order is affirmed with the instructions indicated above. The mandate shall issue forthwith. No costs.
 
 
 
 [1]
 In Griggs v. Duke Power Co., 401 U.S. 424, 433-434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court noted that the EEOC's Guidelines interpreting the Act according to the mandate of 42 U.S.C. 2000e-12(a) were 'entitled to great deference.' However, Griggs does not require 'compliance by every employer with each technical form of validation procedure set out in (the Guidelines).' United States v. Georgia Power Co., 474 F.2d 906, 913 (5 Cir. 1973). If the EEOC's interpretations go beyond congressional intent, the Guidelines must give way. See Espinoza v. Farah Manufacturing Co., 414 U.S. 86, 92-97, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973)
 
 
 [2]
 Although plaintiffs had not requested it, the district court commented that summary judgment would not be proper without an evidentiary hearing. As a matter of principle, we cannot approve the intimation that under F.R.Civ.P. 56(e) defendants who are required to sustain the job-relatedness of examinations but fail to present any justifying material are nevertheless entitled to a trial. See Dressler v. MV Sandpiper, 331 F.2d 130 (2 Cir. 1964); 6 Moore, Federal Practice P56.22(2) (1972)
 
 
 [3]
 As to this, see our opinion in Vulcan Society v. Civil Service Comm'n, 490 F.2d 387
 Plaintiffs' attack on the defendants' proposed validation method provides a perfect illustration of the pitfalls of judicial embroilment in the nomenclature of employment testing. The plaintiffs place great weight on their claim that 'rational validation' is not among the methods of validation that enjoy professional acceptability. Yet it appears that at least among some experts 'rational validation' is a generic term for 'content' and 'construct' validation, methods that are expressly approved in the EEOC Guidelines when establishing criterion-related validity through predictive or concurrent validation is not feasible. 29 C.F.R. 1607.5(a). See Note, Employment Testing: The Aftermath of Griggs v. Duke Power Company, 72 Colum.L.Rev. 900, 913 (1972). See also Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1121-22 (1971); Johnson, A Second Look at Griggs v. Duke Power Company: Ruminations on Job Testing, Discrimination, and the Role of the Federal Courts, 58 Va.L.Rev. 844, 858-64 (1972).