**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Nahum VASKEVITCH, David Sofer, Plenmeer, Ltd., and Meda Establishment, Defendants.**

**No. 87 Civ. 1620 (RWS).**

United States District Court, S.D. New York.

March 30, 1987.

Gary Lynch, John H. Sturc, Thomas C. Newkirk, John Courtade, Gary Lloyd, L. Hilton Foster, Howard T. Carolan, Jr., Nancy E. Thofner, Lynn Leibovitz, of counsel, Arlen G. Loselle, Special Counsel, New York City, for S.E.C.

SWEET, District Judge.

A motion for a preliminary injunction, expedited discovery, and an accounting has been made by the Securities and Exchange Commission ("SEC"). The motion is unopposed and will be granted.

**Prior Proceedings**

For some months, the SEC has been conducting an investigation pursuant to a Formal Order of Private Investigation entitled *In the Matter of Trading in Certain Securities by Plenmneer, Ltd. and Others* (HO–1865), authorized and issued by the Commission on August 14, 1986. On March 10, 1987, the SEC learned that one of the targets of the investigation, against whom the SEC had gathered substantial evidence, had made immediate arrangements to transfer substantial assets from the United States to a Swiss bank. The SEC also learned that the target had in the previous two months transferred nearly $2 million out of the United States to offshore accounts. To prevent further dissipation of assets subject to disgorgement, the Commission applied to Part I of this court early in the morning on March 11, 1987 before filing the complaint. The Honorable Robert L. Carter, sitting in Part I, signed a Temporary Restraining Order returnable March 20, 1987. On March 20, the TRO was extended ten days from the bench in order to further examine the extensive documentary material submitted by the SEC in support of its application.

**Facts**

The facts set forth by the SEC in the affidavits, documents and transcribed testimony before the SEC establish a strong *prima facie* case of previous securities violations and a reasonable likelihood that the wrongs will be repeated. In addition, unless an asset freeze is granted, there is a reasonable likelihood that such funds may be secreted outside the jurisdiction of the court, and consequently that no funds will remain to satisfy any final judgment that may ultimately be granted.

In broad strokes, the facts of this case are simple, and the pattern (though not the scale) is typical to violations of the securities laws; someone entrusted with confidential information tips off an outsider who secretly trades on the basis of the information and reaps unfair profits at the expense of the average investor.

Nahum Vaskevitch ("Vaskevitch") was a managing director of the Mergers and Acquisitions department in the London Office of Merrill Lynch Pierce Fenner and Smith ("Merrill Lynch"). Given his high position and the collegial working relationships of Merrill Lynch's M & A Department, Vaskevitch was privy to vast amounts of confidential information about the company's clients.

David Sofer is an investor and businessman who conducts business in the United States, Israel, and other foreign nations. In the names of Plenmeer Ltd. ("Plenmeer") and Meda Establishment ("Meda"), both of which are also defendants, Sofer opened securities brokerage accounts at Russo Securities, Inc. ("Russo") and MKI Securities ("MKI"). The evidence sub-

mitted by the SEC shows that Sofer had complete control over the accounts.

The affidavits and documents submitted by the SEC show a recurring pattern. Vaskevitch, in his position as the London M & A director, would learn valuable, confidential information about an acquisition under negotiation but not yet public. During the crucial periods in which the deals were negotiated, telephone calls were placed to Vaskevitch's home or office from telephones readily accessible to Sofer, such as the phones in his hotel suite or in offices of acquaintances whom he was visiting. After the calls were placed, Plenmeer and Meda would begin to buy heavily in the securities which Vaskevitch knew to be moving quickly toward a deal. An obvious inference from these facts is that Vaskevitch, in violation of his duty to Merrill Lynch and its customers, was passing confidential information to Sofer on which Sofer, knowing or having reason to know of Vaskevitch's breach, secretly traded for their mutual profit. Consequently, the SEC has made out a strong *prima facie* case of insider trading that implicates Sofer, Vaskevitch, Plenmeer and Meda.

The SEC has documented at least four extraordinary business transactions in which this pattern essentially repeated itself: a transaction involving Pay Less Drug Stores, Northwest, Inc.; a transaction involving the Saga Corporation; and an attempted transaction involving Par Pharmaceutical Co. In some deals, the SEC has documented the fact that telephone calls were placed, but even when they have not, Sofer's buying pattern tracks Vaskevitch's knowledge of changes in the deal. The SEC has calculated that the profits reaped by trading in the Plenmeer and Meda accounts in three of these securities exceeds $2 million.

The frequency and size of these transactions plainly sustain a strong inference that the wrong will be repeated. Certainly no moral compunctions appear to hinder the defendants, and Vaskevitch—only recently discharged from Merrill Lynch—has carried away a wealth of secrets from the days in which he was trusted by his colleagues.

Finally, it appears from the evidence presented by the SEC that as the heat of the investigation was increasingly brought to bear on Sofer, he took steps to move his considerable assets outside the United States. Under the circumstances it is an entirely fair inference that he was doing so to secrete their booty. Although the SEC has presented evidence that Vaskevitch, Sofer, Plenmeer and Meda have all been served, none have appeared and none have tendered any evidence in any form in opposition to the SEC's application.

**Conclusions**

When there is a dispute over facts, an evidentiary hearing is required before issuing a preliminary injunction. Here, however, the defendants have chosen not to appear and, therefore, not to oppose the SEC's facts. A defendant "cannot block issuance of an injunction simply by refusing to submit evidence on contested fact issues." *Guardians Ass'n of New York Police Dept., Inc. v. Civil Service Commission,* 490 F.2d 400, 403 (2d Cir.1973) (Friendly, J.). This application for a preliminary injunction therefore has been considered entirely on the basis of the uncontested documentary material submitted by the SEC.

■ These documents make out a *prima facie* case that by passing nonpublic information to Sofer to reap profits on the market, Vaskevitch has violated a fiduciary duty to Merrill Lynch and its clients. As the Supreme Court said in *Dirks v. SEC,* 463 U.S. 646, 659, 103 S.Ct. 3255, 3263–64, 77 L.Ed.2d 911 (1983), "Not only are insiders forbidden by their fiduciary relationship from personally using undisclosed corporate information to their advantage, but they also may not give such information to an outsider for the same improper purpose of exploiting the information for their personal gain." *See also* 15 U.S.C. § 78j(b). In turn, a tippee inherits the tipper's fiduciary duty if the insider has breached his duty "and the tippee knows or should know that there has been a breach." *Id.* at 660, 103 S.Ct. at 3264. The facts adduced by

the SEC meet this standard with regard to Sofer.

As to the possibility of future illegal activity by the defendants, the Second Circuit has held: "Certainly, the commission of past illegal conduct is highly suggestive of the likelihood of future violations." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir.1975). The inference depends, of course, on the totality of the circumstances, *id.*, and in this case is particularly bolstered by Vaskevitch's store of knowledge about deals that may still go forward.

■ The standard is that the SEC is entitled to a preliminary injunction if the evidence establishes a strong *prima facie* case of previous violations and a reasonable likelihood that the wrong will be repeated. *Id.* Because the SEC has done so, a preliminary injunction will issue. The same factual showing demonstrates the present need for expedited discovery and the preservation of whatever assets are presently held.

■ As to the issue of an asset freeze, the court certainly has the ability to ensure that the defendants' assets are not secreted or dissipated before entry of final judgment concluding this action. *See, e.g., International Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir.1974); *SEC v. General Refractories Co.*, 400 F.Supp. 1248, 1260 (D.D.C.1975). Given the defendants' efforts to move assets offshore, such a freeze will be ordered. Of course, if at some later stage the freeze appears too broad, it can be appropriately narrowed. *See Vesco*, 490 F.2d at 1347 & n. 18.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that the defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them, be and hereby are preliminarily enjoined until judgment is entered in this cause from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b–5 [17 C.F.R. § 240.10b–5] promul-

gated thereunder, by directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) employing any device, scheme or artifice to defraud;

(b) making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) engaging in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

IT IS FURTHER ORDERED that the defendants, their officers, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them, be and hereby are preliminarily enjoined until judgment is entered in this cause from violating Section 14(e) of the Exchange Act [15 U.S.C. 78n(e)] and Rule 14e–3 [17 C.F.R. 240.14e–3] promulgated thereunder, by directly or indirectly, in connection with any offer or request or invitation for tenders, engaging in any fraudulent, deceptive, or manipulative act or practice by:

(a) trading in the securities sought or to be sought in the tender offer while in possession of material information relating to said tender offer which they know or have reason to know is nonpublic and know or have reason to know was acquired directly or indirectly from the offering person, the issuer of the securities sought or to be sought in such tender offer, or any officer, director, partner, employee or other person acting on behalf of the offering person or such issuer, without disclosing such information and its source a reasonable time prior to trading; or

(b) communicating material information relating to a tender offer, which information they know or have reason to know is

nonpublic and know or have reason to know was acquired directly or indirectly from the offering person, the issuer of the securities sought or to be sought in the tender offer, or any person acting on behalf of the offering person or such issuer, to any other person under circumstances in which it is reasonably foreseeable that such communication is likely to result in violation of Rule 14e–3 [17 C.F.R. § 240.14e–3], promulgated under Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)].

IT IS FURTHER ORDERED that until final judgment is entered in this cause, the defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, and each of them, shall hold and retain with their control, and otherwise prevent any concealment, disposition or dissipation whatsoever of any assets, funds or other property presently held by them or under their control; and each of the financial and brokerage institutions and all other persons or entities presently holding such assets, funds or other property shall hold and retain within his control and prohibit the withdrawal, removal, transfer or other disposal of any of the assets, funds or other property presently held by or under its control on behalf of each defendant, or in any other account maintained in the name or for the benefit of each such defendant.

IT IS FURTHER ORDERED that until otherwise ordered by the court, the defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, and each of them, be and hereby are restrained from destroying, mutilating, concealing, altering or disposing of any items, including but not limited to any books, records, documents, contracts, agreements, assignments, obligations or other property of the defendants herein, relating to the defendants or any of their securities, financial or business dealings.

IT IS FURTHER ORDERED that each of the defendants shall within ten (10) business days of the service of this order, file with this court and serve upon the Commission a listing of:

(a) all securities, funds or other assets of each defendant held in his or its name or in which he or it has any direct or indirect beneficial interest, from January 1, 1984, to the present, stating the location and disposition of each of such assets;

(b) each account with any financial institution or brokerage firm maintained in his or its name or in which he or it has any direct or indirect beneficial interest, from October 1, 1986, to the present, including but not limited to each account through which he or it directed securities transactions at any time since January 1, 1984, or in which proceeds from such transactions were held;

(c) transactions and the disposition of proceeds of transactions in securities conducted in each account identified in response to subparagraph (b) of this paragraph; and

(d) every transaction from January 1, 1984 to the present in which any funds or other assets of any kind were transferred from any defendant to any other defendant in this action.

IT IS SO ORDERED.