SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

CURRENT FINANCIAL SERVICES,
INC., Defendants.

Civ. A. No. 91–3089 SSH.

United States District Court,
District of Columbia.

Feb. 3, 1992.

Thomas C. Newkirk, Ellen B. Cohn,
Bruce A. Hiler, Julie K. Lutz, Jonathan I.

Golomb, William E. Morse, Petrna M. Burnham, SEC, Washington, D.C., for plaintiff.

John P. Sweeney, Gregg L. Bernstein, Ann M. Sheridan, Miles & Stockbridge, Baltimore, Md., for Librandi.

Burton H. Finkelstein, Steven M. Rosenberg, Brenda C. Ruben, Finkelstein, Thompson & Loughran, Washington, D.C., Robert B. Bieck, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Current Financial, Richard Hope, Goff, Otis Hope and Alpha Invest.

Douglas D. McMillan, Dallas, Tex., for Victory Financial and Worley.

David W. Benner, pro se.

Douglas R. Rayburn, pro se.

James V. Grevelle, Dallas, Tex., for Strength Financial and Wilson.

John A. Chalk, Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, Tex., for Med–Fac and Hammond.

James A. Backstrom, Anthony J. Guida, Jr., Buchanan Ingersoll Prof. Corp., Philadelphia, Pa., for American Equity and Kennison.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the motion of defendant Current Financial Services, Inc. (Current), for modification of the Court's December 5, 1991, Temporary Restraining Order (TRO) and on the motion of plaintiff, the Securities and Exchange Commission (SEC), for the appointment of a receiver. On consideration of the entire record, the Court denies defendant's motion and grants plaintiff's motion.

### Background

This is an SEC enforcement action. Defendant Current was in the business of factoring medical accounts receivable. According to the uncontradicted evidence submitted by the SEC in support of its motion for a TRO, Current engaged in a campaign to raise capital through the offer and sale of unregistered debt securities. Current sold the securities to a group of subissuers, who then sold their own debt securities to the investing public.[1] Current, its subissuers, and a number of individual defendants conducted the sale of debt securities in violation of the registration and antifraud provisions of the federal securities laws.[2] The SEC filed this action seeking a permanent injunction prohibiting defendants from engaging in further violations of the securities laws, disgorgement of profits earned through securities violations, and restitution or rescission in favor of the investors.[3]

Current did not contest the entry on December 5, 1991, of a TRO prohibiting further sales of unregistered securities.[4] The

---

1. The subissuers include defendants Alpha Investment Services, Inc., American Equity Funding Corporation, Med–Fac Investments, Inc., Current Financial Services of Mississippi, Inc., Victory Financial Services, Inc., and Strength Financial Concepts, Inc.

2. Current and its codefendants allegedly violated sections 5(a) and (c) of the Securities Act, 15 U.S.C.A. §§ 77e(a) & (c), section 10(b) of the Exchange Act, 15 U.S.C.A. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5.

3. According to the SEC's exhibits in support of its motion for a TRO, the securities that Current and its subissuers offered and sold were not registered with the SEC. In addition, the defendants misled the investing public on several points. First, without a factual basis supporting their representations, the defendants stated that the investment would provide a rate of return between twelve and sixty percent. Second, the defendants failed to disclose the risks associated with Current's underlying business that would affect the value of its debt securities. Third, the defendants led some investors to believe that the SEC passed on the merits of Current's securities, an action that the SEC does not take with regard to any offering or security.

4. Defendants Alpha Investment Services, Inc., American Equity Funding Corporation, Richard W. Hope, Clovis P. Goff, Otis R. Hope, and Mark E. Kennison also consented to the TRO. Regardless of the defendants' consent, the SEC more than met its burden of demonstrating a reasonable basis to believe that defendants committed securities violations. *See SEC v. International Loan Network, Inc.,* 770 F.Supp. 678, 680 (D.D.C.1991); *SEC v. General Refractories Co.,* 400 F.Supp. 1248, 1254 (D.D.C.1975). Indeed, the SEC's evidence established a *"prima facie* case of previous violations and a reasonable likelihood that the wrong will be repeated." *See SEC v. Vaskevitch,* 657 F.Supp. 312 (S.D.N.Y. 1987).

Court also issued an order freezing Current's assets, requiring it to provide an accounting, and appointing a disbursement agent to approve all payments on Current's behalf.[5] On December 27, 1991, after a two-week extension of time, Current filed its accounting. On December 31, 1991, Current filed the pending motion for modification of the TRO on the grounds that such a modification would be in the best interests of the purchasers of its debt securities.[6] Current requests permission to resume its underlying business of factoring medical accounts receivable under the supervision of the court-appointed disbursement agent. Current also seeks an order requiring the disbursement agent to approve interest payments to its investors and to reimburse Current's officers for expenses incurred prior to the entry of the TRO. The SEC opposes such modifications and moves for the appointment of a receiver with the authority to take control of Current's business, to pursue any outstanding claims, and to liquidate the corporation or to declare bankruptcy, if necessary.

### Discussion

■ A district court in an SEC enforcement action has the authority, through its equitable jurisdiction, to fashion an appropriate remedy on a proper showing of a securities violation. *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir.1973). The ultimate remedies available to the court include disgorgement, restitution, and rescission. *See Manor Nursing,* 458 F.2d at 1100–1106. To preserve a basis for such remedies, the district court may impose an interim asset freeze. *See SEC v. Unifund SAL,* 910 F.2d 1028, 1041 (2d Cir.1990); *SEC v.*

*American Bd. of Trade, Inc.,* 830 F.2d 431 (2d Cir.1987), *cert. denied, sub nom. Economou v. SEC,* 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988); *Manor Nursing,* 458 F.2d at 1105; *International Loan Network,* 770 F.Supp. at 696. An asset freeze "assures that any funds that may become due can be collected." *Unifund SAL,* 910 F.2d at 1041; *accord SEC v. General Refractories Co.,* 400 F.Supp. 1248, 1259 (D.D.C.1975). In determining whether to order an asset freeze, the court must weigh "the deleterious effects" the freeze may have on the defendants' business against "the considerations indicating the need for such relief." *Manor Nursing,* 458 F.2d at 1106; *International Loan Network,* 770 F.Supp. at 696.[7]

■ The district court also may appoint a receiver at the request of the SEC if necessary "to effectuate the purposes of the federal securities laws." *Manor Nursing,* 458 F.2d at 1105; *see also SEC v. First Financial Group of Texas,* 645 F.2d 429, 438 & n. 14 (5th Cir.1981) (citing cases). Thus, the court may appoint a trustee to preserve the status quo while arranging a defendant's complicated business records. *See, e.g., Manor Nursing,* 458 F.2d at 1105 (approving the appointment of a receiver to unravel complicated transactions and to trace investors). The court also may appoint a receiver on a *"prima facie* showing of fraud and mismanagement." *SEC v. Keller Corp.,* 323 F.2d 397, 403 (7th Cir.1963). A receiver is "particularly necessary in instances in which the corporate defendant, through its management, has defrauded members of the investing public; in such cases it is likely that, in the absence of the appoint-

5. The parties agreed that the TRO would remain in effect pending the entry of final judgment, thereby eliminating the need for a preliminary injunction.

6. Paragraph XV of the TRO expressly permitted a motion for modification of the TRO following compliance with its provisions. Current initially sought an order requiring the SEC to show cause why the TRO should not be modified and requested a hearing on January 7. The Court did not issue the show cause order, but rather treated the request as a motion to modify the TRO. Consistent with the terms of the TRO, the

Court permitted the SEC to conduct expedited discovery and to respond to the motion on January 21, 1992. The SEC filed its opposition together with a motion to appoint a receiver on that date. On January 22, the Court held a hearing on the motions. Current addressed the requested appointment of a receiver at the hearing and indicated that it would submit on its oral argument.

7. Because the SEC seeks to continue the existing asset freeze, the standards for imposing such an order apply to Current's motion.

ment of a receiver to maintain the status quo, the corporate assets will be subject to diversion." *First Financial Group,* 645 F.2d at 438.

■ The SEC made a strong showing of the alleged securities violations in support of its motion for a TRO. *Cf. Unifund SAL,* 910 F.2d at 1041 (partially reversing freeze order where SEC's showing not substantial). Current has not countered any of the SEC's proffered evidence, nor does it contest that the SEC's showing is adequate to support some interim relief.[8] Current argues that the freeze on its underlying business is not necessary to protect its investors or to preserve its assets for potential remedies in the future.

Several factors weigh in favor of continuing the freeze order as it applies to Current's underlying business. First, Current has not maintained accounting records sufficient to evidence its financial condition. (*See* Wogan dec. at 6–7: Balhoff dec. at 5.) Second, to the extent Current's financial condition can be determined, the SEC has demonstrated that it is on the brink of insolvency. Third, Current's underlying business involves a high level of risk, and therefore resuming operations would jeopardize whatever assets Current now has.

The accounting Current submitted in compliance with the TRO shows that the company earned a profit of $491,097.14 during the period immediately prior to the entry of the TRO from July 1, 1991, to November 30, 1991. To reach this figure, however, Current did not deduct executive salaries totalling $97,000.00 or interest owed to investors totalling $862,000.00. (Estabrook dec.) Current also failed to indicate a reserve for uncollectible receivables. Taking those items into consideration, Current's accounting would reveal a

loss of $468,000.00 for the period from July through November. (Estabrook dec.)

Current's Chief Executive Officer concedes that the corporation is insolvent, although he signed the accounting which indicates that the corporation is solvent. (Plaintiff's ex. B., Hope dep. at p. 33.) According to both the court-appointed disbursement agent and the certified public accounting firm that he retained to review Current's finances, Current overvalued several of the items which it listed in its accounting as assets. For example, Current's largest asset, designated "Account receivable—HIC," was valued above $3.9 million. Under Generally Accepted Accounting Principles (GAAP), the HIC account should be assigned no value. (Wogan dec. at 6–7; Balhoff dec. at 5.)[9] Current similarly inflated the value of other accounts receivable listed among its assets. (Wogan dec. at 7–9.) Current now disavows the accuracy of the accounting it submitted, apparently conceding its weak financial position and its lack of orderly records.[10]

Current's underlying business involves a level of risk that is inconsistent with the purpose of preserving its existing assets for the benefit of its public investors. Current concedes that banks consider the receivables it purchases to be insufficient collateral for financing. (Plaintiff's ex. B., Hope dep. at p. 165.) The inherent level of risk was exacerbated by Current's manner of conducting business. Current dealt primarily with startup companies, that are unable to obtain traditional financing. Many of those companies are now insolvent. (Plaintiff's ex. A, Vinson dep; ex. C, PMG dep.; ex. H, Zeringue dep.; & ex. F, Watson dep.) In many cases, Current failed to verify that insurance coverage

---

8. Current has not admitted to the alleged violations, although it consented to the entry of the TRO. In its answer to the complaint, Current admits that it sold over 200 "debt instruments" for over $10 million and that the instruments were not registered with the SEC. Current denies that it believed that the instruments were "securities" subject to SEC regulation.

9. "GAAP requires that an interest in an asset be in existence and does not permit booking con-

tingent assets (Financial Accounting Standard 5, ¶ 17); Current's interest in the HIC receivable, as it was explained to me by Mr. Hope and his attorneys, does not satisfy these requirements." (Balhoff dec. at 5.)

10. The SEC states that Current sought assistance from the disbursement agent's accounting firm against the SEC's explicit instructions.

was available for the receivables it purchased. (Plaintiff's ex. D, Goff dep. at 164; ex. B, Hope dep. at 52 & 105–06; ex. A, Vinson dep. at 2.) In fact, Current included a group of fictitious receivables among the assets it listed in its accounting. (Hunter dec. at ¶ 9.) Finally, Current extended loans to companies owned in whole or part by its own officers. (Plaintiff's ex. B, Hope dep. at 77.) The overall picture indicates that Current engaged in few transactions that were both arms-length and secure.

Current probably will not be able to restore its business if it is not permitted to resume purchasing medical accounts receivable. It will lose the goodwill of the companies whose receivables it purchases and who rely on it to provide cash for their day-to-day operations. Nevertheless, there does not appear to be any low-risk portion of Current's business for it to resume. Even if the monitoring agent could limit Current to "safe" transactions, a role that would be extremely time-consuming, its business is not lucrative enough to warrant the risk of further depleting its assets. On balance, the Court concludes that the likelihood of a final judgment against Current and the need to preserve its assets to satisfy such a judgment outweigh the likely harm to Current from continuing the asset freeze.

■ With regard to the additional requested relief, the Court declines to authorize Current to make interest payments to the holders of its debt securities. Such payments would provide some return to its investors, but they would reduce the assets ultimately available to satisfy a judgment in this case.[11] Preserving Current's assets until this action is resolved will ensure that similarly situated investors are treated equally. In addition, the Court will not authorize reimbursement of Current's officers for expenses incurred prior to the entry of the TRO. The parties dispute the

nature of the requested expenses. Current refers to charges in connection with responding to the SEC's subpoena, while the disbursement agent refers to lease payments for a Mercedes–Benz and life insurance premiums. The officers may renew their request for reimbursement when they can demonstrate that the expenses are properly chargeable to Current.

■ An additional factor indicates that appointing a receiver is appropriate at this time. Since the entry of the TRO, Current has not taken action to preserve its assets or to collect amounts owed to it. Current has not collected outstanding accounts receivable. (Plaintiff's ex. B, Wogan dec. at 3.) In some instances, the health care providers whose receivables Current purchased have indicated that they cannot pay the amount due unless Current purchases new accounts receivable to provide cash for operating expenses. Current concedes that it has not taken action against the health care providers, but argues that it has hoped to maintain the clients' goodwill in the event the Court permitted it to resume business.[12] There are also note payments due in Current's favor, which it has not taken steps to collect or to secure. Therefore, appointing a receiver with the authority to collect Current's outstanding receivables and note payments is necessary to preserve Current's rights against its debtors.

The SEC requests that the Court now grant the receiver the authority to liquidate Current and to declare bankruptcy. It would be premature at this stage to confer such broad powers. The existing freeze on Current's assets is sufficient to preserve them for future remedies. The further step of liquidating Current's assets or declaring bankruptcy is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment. The SEC may renew its

---

**11.** The Court has received a number of letters from holders of Current's securities who ask the Court to lift the freeze. Those letters have been made a part of the record. Many of the letters reflect unwavering confidence in Current and its officers, while admitting ignorance of the nature of this case and its factual basis. Some of the letters indicate that Current has misled its investors by stating that this action is a "routine" regulatory matter.

**12.** Current's counsel made representations to that effect at the motions hearing.

motion to encompass such relief if necessary in the future.

### Conclusion

Current has history of fast and loose business. That history is particularly disturbing because it involved substantial amounts of money provided by public investors—money for which Current appears unable to account. Permitting Current to resume operations in the face of the SEC's overwhelming evidence of misguided (if not fraudulent) practices would be reckless.

The appointment of a receiver is necessary to collect outstanding accounts receivable and notes in Current's favor. In the hope that the parties can agree upon an individual to serve as receiver, the Court will allow seven days within which to submit a joint recommendation. If no agreement can be reached, each side may propose two names. The Court will select a receiver from the proposed candidates or will name its own choice. An order appointing the receiver, specifying his or her authority, and providing for payment, will follow. Accordingly, it hereby is

ORDERED, that Current's motion to modify the TRO and for other relief is denied. It hereby further is

ORDERED, that the SEC's motion for appointment of a receiver is granted. Within seven days of the date of this Order, if agreement is achievable the SEC and Current shall submit a joint recommendation of a person to serve as receiver. If the parties cannot agree to the appointee, each shall propose two individuals within the same period.

SO ORDERED.