**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**COMCOA LTD., a/k/a Comcoa Ltd., Inc., and Thomas W. Berger, Defendants.**

No. 94–8256–CIV.

United States District Court, S.D. Florida.

March 13, 1995.

Order Denying Stay March 22, 1995.

---

Howard A. Tescher, Kipnis, Tescher, Lippman, Valinsky & Kain, Ft. Lauderdale, FL, for J.B. Grossman.

William Nortman, Nortman & Bloom, P.A., Miami, FL, for Comcoa defendants.

John C. Mattimore, Eric Bustillo, S.E.C., Miami, FL, for plaintiff.

Steven E. Siff, P.A., McDermott, Will & Emery, Miami, FL, for receiver for Comcoa.

## ORDER

HIGHSMITH, District Judge.

This cause came before the Court for a show cause hearing on February 27, 1995, to determine whether the Law Offices of J.B. Grossman ("Grossman") should be held in contempt of Court for violation of a temporary restraining order ("TRO") entered in the above-styled action; and also upon Grossman's Motion for Clarification, filed November 4, 1994.

## BACKGROUND

On May 6, 1994, a temporary restraining order was entered in the above-styled action which, *inter alia*, restrained the defendants and their agents, including their attorneys, from either "directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of, or withdrawing any assets or property owned or controlled by the defendants." On May 16 and 17, 1994, the Court held a preliminary injunction hearing. At that hearing, the Court also considered the defendants' various pending motions, including their motion to dismiss for lack of subject matter jurisdiction and motion to vacate TRO.

At the time of the entry of the TRO, Grossman, counsel for the defendants, held $105,100.00 in a trust account on behalf of the defendants. Pursuant to the terms of the retainer agreement between Grossman and the defendants, the funds in this account would become nonrefundable upon the institution of an SEC enforcement action against the defendants.

At the hearing, the Court determined that the TRO would remain in effect until further order of the Court. Specifically, the Court stated that: "The status quo remains until I rule on the substantive motion, which I will, I will rule now on the substantive motion to dismiss for lack of subject matter jurisdiction, and depending upon that ruling, I will then rule upon the request for preliminary injunction as either moot, not warranted, or warranted. All right? Do you have anything further, questions that is?" At this point, Grossman responded "No sir." At no time did Grossman raise any objections or concerns with regard to the extension of the TRO.

On June 3, 1994, the Court issued its ruling on the defendants' various pending motions, including the motion to dismiss and the motion to vacate the TRO. All the defendants' motions were denied. Thereafter, on June 7, 1994, the Court issued an order of preliminary injunction. The preliminary injunction was dated "nunc pro tunc" to June 3, 1994, to correspond with the entry of the omnibus order of that date.[1]

---

1. While Grossman takes issue with respect to the propriety of the Court's *nunc pro tunc* dating of the preliminary injunction, the Court need not reach this issue as it is beyond the scope of the show cause hearing; namely, whether Grossman violated the TRO.

On June 6, 1994, Grossman filed an emergency motion for release of funds. On that same day, instead of awaiting the Court's ruling on his emergency motion, Grossman transferred $91,500.00 out of the defendants' trust account and into an operating account held by the law firm, in satisfaction of the defendants' outstanding bill for Grossman's legal services; i.e., for costs incurred.[2] Thereafter, the SEC filed its motion for an order to show cause why Grossman should not be held in contempt of court for violating the Court's May 6, 1994, TRO and "subsequent orders effectively extending it."

## DISCUSSION

 The principal purpose of the federal securities laws is to protect investors by requiring the full disclosure of information material to investment decisions, by compensating defrauded investors, and by deterring fraud and manipulative practices. *Randall v. Loftsgaarden*, 478 U.S. 647, 664, 106 S.Ct. 3143, 3153, 92 L.Ed.2d 525 (1986). Because these laws are remedial in nature, they are to be liberally construed. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir. 1990); *Castleglen, Inc. v. Commonwealth Sav. Ass'n*, 689 F.Supp. 1069, 1072 (D.Utah 1988). In an SEC enforcement action, the district court has the authority, through its equitable jurisdiction, to fashion an appropriate remedy on a proper showing of a securities violation. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir.1972). The ultimate remedies available to the court include disgorgement, restitution, and rescission. *SEC v. Current Financial Servs., Inc.*, 783 F.Supp. 1441, 1443 (D.D.C.1992). To preserve a basis for such remedies, the district court may impose an interim asset freeze. *CFTC v. American Metals Exchange Corp.*, 991 F.2d 71, 79 (3d Cir.1993); *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990).

 In imposing a freeze of assets, there is no requirement that the court exempt sufficient assets for the payment of legal fees. *See SEC v. Cherif*, 933 F.2d 403, 416–17 (7th Cir.1991), *cert. denied*, 502 U.S. 1071, 112 S.Ct. 966, 117 L.Ed.2d 131 (1992). Indeed, the use of frozen assets for attorney's fees has been disallowed in circumstances more extreme than in the instant case. *See, e.g., Caplin & Drysdale Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (criminal forfeiture statute) (defendant paid attorney $25,000.00 in violation of restraining order); *United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (criminal forfeiture statute) (defendant's motion to vacate restraining order to permit use of frozen assets to retain attorney denied); *United States v. One Residential Property Located at 501 Rimini Road*, 733 F.Supp. 1382 (S.D.Cal. 1990) (civil forfeiture statute) (no constitutional right to civilly forfeitable assets for payment of legal fees). Moreover, in other contexts, attorneys have been required to disgorge nonrefundable retainers. *See, e.g., In re Mondie Forge Co.*, 154 B.R. 232, 239 (N.D.Ohio 1993) (bankruptcy case); *United States v. Harvey*, 814 F.2d 905, 913, 918 (4th Cir.1987) (RICO/CCE action). In all of these cases, the courts have essentially held that a defendant has no right to spend another's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain counsel of his choice. *See Property Located at 501 Rimini Road*, 733 F.Supp. at 1386 (quoting *Caplin & Drysdale*, 491 U.S. at 625, 109 S.Ct. at 2652). The reasoning of these cases has been extended to SEC enforcement actions. *See, e.g., Cherif*, 933 F.2d at 416–17.

In this case, the Court imposed an asset freeze on May 5, 1994. Subject to that freeze was the trust account maintained by Grossman on behalf of the defendants. Grossman contends that at the moment of the freeze, the law firm garnered title to the funds in that account. Hence, the Court must first determine who has the superior

---

**2.** The SEC maintains that the actual amount held in the retainer account at the onset of this action and then subsequently transferred to the law firm's operating account is $106,000.00. At the show cause hearing on this matter, Grossman testified that only $91,500.00 was transferred, and that the remainder, approximately $3,600.00, is still being held in the defendants' trust account. The Court finds that $91,500.00 is the correct amount in dispute, and that the remaining $3,600.00 is unquestionably subject to disgorgement to the Receiver.

interest in the funds, thereby establishing whether the funds were subject to the TRO.

### 1. *The Nonrefundable Retainer Account.*

Grossman contends that "the representation agreement and retainer the law firm fashioned for the Defendants was based on the firm's experience, business judgment and what may be needed to meet the clients' instructions to defend their rights in an asset freezing action," because, "[i]n its experience, the law firm has found that regulatory agencies move quickly and without notice in many circumstances involving telecommunications and securities questions." By example, Grossman cites to its experience with an ongoing, unrelated SEC action, *FTC v. Metropolitan Communications, et al.,* 94–CIV–0142–(JFK) (SDNY).

■■■ It is a well-founded principle of contract construction that an instrument shall be construed most strongly against its draftsman. *See United States v. Seckinger,* 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970). In this regard, given Grossman's vast experience with the securities laws, the Court finds that, without a doubt, Grossman drafted the retainer agreement with the intention of circumventing federal securities laws.[3] By drafting the retainer agreement in such a fashion as here, Grossman has protected its own economic interests at the expense of others. Indeed, to uphold this type of retainer agreement would not only render the SEC powerless to effectively freeze assets to protect the interests of defrauded investors, but would also, in essence, require the defrauded investors to foot the bill of their opposing counsel. Such an outcome is extremely offensive to this Court, and unquestionably contrary to public

policy and the intent and goals of the federal securities laws.[4] Because the Court finds that the retainer agreement at issue in this case contravenes public policy and the law, it concludes that such agreement is· void and unenforceable as drafted. *See American Casualty Co. v. FDIC,* 1993 WL 610760, at *7 (S.D.Miss.1993). The fact that Florida generally recognizes nonrefundable retainers does not defeat this conclusion. Even under Florida law, an agreement that contravenes public policy is not enforceable as a matter of law. *See American Casualty Co. v. Coastal Caisson Drill Co.,* 542 So.2d 957, 958 (Fla. 1989). Hence, the funds at issue were subject to the TRO entered on May 5, 1994.

■■ The Court further finds that Grossman is not without recourse. The funds in question are only forfeitable to the extent they are comprised of the defendants' ill-gotten gains. *See, e.g., SEC v. Unioil,* 951 F.2d 1304, 1306–07 (D.C.Cir.1991) (Edwards, J., concurring) (Party seeking disgorgement is entitled to recover only the amount of the fraud.). If Grossman can show that the funds are from some other, *untainted* source, it may have a legitimate claim to those funds.[5] In addition, Grossman may have a suit in quantum meruit against the defendants. *See, e.g., Wong v. Michael Kennedy, P.C.,* 853 F.Supp. 73, 81 (E.D.N.Y.1994) (Although retainer agreement was void as a matter of law, counsel was not precluded from recovering payment in quantum meruit.). At the very least, Grossman can file a creditor's claim with the Receiver and, like all other creditors are required to do, wait its turn in line. *Cf. United States v. Thier,* 801 F.2d 1463, 1474 (1986), *opinion modified on denial of reh'g,* 809 F.2d 249 (5th Cir.1987) (Attorney may bring third-party claim for

---

3. Indeed, the Court finds that Grossman is well-versed in the ways of SEC enforcement of the federal securities laws. The law firm has represented several telecommunications/securities clients other than the defendants in the instant case. And J.B. Grossman, himself, has over 21 years legal experience, including serving as a Commodity Futures Trading Commission attorney and also as special counsel for the New York Stock Exchange.

4. The Court can envision still other repercussions from the upholding of agreements such as

the one presented here; one being the potential for defendants, in the guise of paying legal fees, to hide assets. Such a "loophole" could conceivably be used to circumvent regulations in non-SEC areas as well.

5. Grossman, however, has not argued that the funds are untainted. Instead, its sole position is that it has a vested interest in the funds as a matter of law by virtue of its retainer agreement with the defendants.

reasonable fee against potentially forfeitable assets under Continuing Criminal Enterprise statute.).

2. *The Temporary Restraining Order.*

 Because the Court has determined that Grossman has no superior interest in the funds at issue and that the funds were subject to the TRO, it must now determine whether Grossman violated that TRO by transferring the funds. Pursuant to *Fed. R.Civ.P.* 65(b), temporary restraining orders granted without notice must be "indorsed with the date and hour of issuance" and "shall expire by its terms within such time after entry, not to exceed ten days, as the Court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered in the record." While TRO's cannot be extended indefinitely, they can be extended pending a ruling on a motion for a preliminary injunction. *S.E.C. v. Unifund Sal,* 910 F.2d 1028, 1034 (2d Cir.1990) ("Nothing in Rule 65 of the Federal Rules of Civil Procedure prevents a district court from continuing a TRO while reserving decision on a motion for a preliminary injunction."). Moreover, a TRO can be extended beyond the 20–day period with the consent of the restrained party. *See Fernandez–Roque v. Smith,* 671 F.2d 426 (11th Cir.1982).

*A. Consent to the extension of the TRO*

 The threshold issue for the Court to address is whether Grossman, on behalf of the defendants, consented to the extension of the TRO until the Court ruled on the pending motions. In this regard, Grossman first contends that it did not consent to the extension of the TRO. The Court, however, finds otherwise. In this case, at the close of the

hearing on the SEC's motion for preliminary injunction, the Court stated that the TRO would remain in effect in all aspects until the Court ruled on the pending motions to dismiss and for preliminary injunction. Grossman did not object at that time, or at any time subsequent to the hearing. Hence, by virtue of its conduct, the Court finds that Grossman consented to the extension of the TRO until the Court ruled on the pending motions. *See Fernandez–Roque v. Smith,* 671 F.2d 426 (11th Cir.1982). In *Fernandez–Roque,* at a hearing to determine the disposition of a previously entered TRO, the district court inquired of the restrained party whether it was willing to let the TRO continue until some time in the future. The restrained party responded that it "would like to leave it up in the air right now." The district court interpreted that response as consent to an extension of the TRO. The Eleventh Circuit agreed.[6] *Id.* at 430.

 Alternatively, Grossman argues that it did not consent to an extension beyond the twenty days provided in Rule 65(b). Specifically, Grossman asserts that "[n]either the Defendants nor the law firm consented to an extension beyond the twenty day time limit of Rule 65(b). When the Court on May 17, 1994 extended the TRO until further order of the Court, it was entirely reasonable for the law firm to believe that the Court was aware of the time limitations of Rule 65(b)." The Court finds, however, that Grossman's subjective belief as to the length of the TRO extension does not negate or limit its consent. *See Geneva Assurance Syndicate, Inc. v. Medical Emergency Servs. Assocs.,* 964 F.2d 599 (7th Cir.1992) (An extension of a TRO beyond the 20–day period was deemed valid even though consent to the extension was based on the mistaken assumption that such extension was appealable.).[7] Moreover, Rule 65(b) clearly contemplates extension of

---

6. Grossman also makes the argument that its filing of a motion to dismiss supports a finding that it did not consent to the extension of the TRO. The Court disagrees. *Cf. Ultracashmere House, Ltd. v. Madison's of Columbus, Inc.,* 534 F.Supp. 542 (S.D.N.Y.1982) (On a motion to dissolve a stay of a TRO, the moving party evinced implied consent to extend the stay until the merits of dissolution were determined.).

7. To the extent Grossman asserts that the Court failed to show "good cause" on the record for the extension, such an assertion is without merit. The Court, in essence, stated it was extending the TRO in order to have time to fully consider the various arguments and motions of the parties.

a TRO beyond twenty days, and Grossman never sought to clarify the issue in this regard. Accordingly, the Court finds that the TRO was still in effect at the time of Grossman's transfer of the funds at issue.[8]

### B. Contempt of court

■ The sole remaining issue for the Court to address is whether it should find Grossman in contempt for violating the TRO. In this regard, the Court notes that Grossman's failure to comply with the TRO need not have been with the intent to disobey. *See Piambino v. Bestline Prods., Inc.,* 645 F.Supp. 1210, 1213 (S.D.Fla.1986) (Contempt proceedings were brought against attorneys for failure to obey a court order to repay into the court registry amounts previously withdrawn in payment of legal fees following settlement of a class action where settlement had been overturned on appeal.). Indeed, the United States Supreme Court has stated that:

> The absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.... An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.

*McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) (citations omitted). Hence, even if Grossman believed, in good faith, that it held legal title to the funds at issue, and that its transfer of the funds was not in violation of the Court's orders, such belief does not protect it from a finding of contempt.

In *Lamb v. Cramer,* 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715 (1932), a civil contempt proceeding against an attorney was brought ancillary to an action to set aside fraudulent conveyances of land and other dispositions of money and personal property by the defendant. The contempt petition alleged that the defendant in the principal suit had transferred to the attorney a substantial part of the property at issue, allegedly in payment of attorney's fees. The Supreme Court held that the attorney was subject to contempt proceedings for his actions in this regard. Specifically, the Court stated:

> The [attorney], as counsel in the principal suit, had notice of the equities alleged in the bill. So far as he acquired, pendente lite, any interest in the property involved in the suit, he was not only subject to those equities, but bound by any decree which the court might make with respect to it, to the extent that it might adjudicate the rights of the plaintiffs against the defendants.... His receipt and diversion of the property, which was then in gremio legis, tended to defeat any decree which the court might ultimately make in the cause. That and his retention of the property after the decree was entered were in fraud of the rights of the plaintiffs to prosecute the suit to its conclusion, and an obstruction of justice constituting a contempt of court which might be proceeded against civilly.

*Lamb,* 285 U.S. at 219, 52 S.Ct. at 316. Here, Grossman acquired its interest in the disputed funds by virtue of the SEC's initiation of this law suit; i.e. pendente lite.

■ Grossman urges the Court to consider the case of *Republic of the Philippines v. Marcos,* 1987 WL 28670, 1987 U.S.Dist. LEXIS 11437 (S.D.N.Y.1987), in which the defendant, before the court could enter a preliminary injunction and upon the advice of counsel that the TRO in that case had expired, transferred funds to his attorney in payment of services rendered. The district court found that the defendant's actions could be deemed "sly," and that such actions were clearly made in bad faith. Nevertheless, the court did not hold the defendant in contempt because the court found that there was "sufficient doubt as a matter of law" as to whether the TRO was in effect at the time of the defendant's actions. *Id.* at *5–6, 1987

---

8. Because the Court finds consent, it need not address Grossman's arguments as to the calcula-tion of the TRO period.

U.S.Dist. LEXIS at *14–15. The Court finds the *Marcos* case neither persuasive nor instructive. Unlike that case, the TRO at issue here clearly did not expire until the Court ruled on the pending motions to dismiss and for preliminary injunction. Moreover, the *Marcos* case involved a defendant relying on the advice of counsel that the TRO had expired. Here, Grossman acted on its own belief that the TRO had expired, and that it held legal title to the funds at issue. Being composed of officers of the court trained in the laws of this country, Grossman should be held to a higher standard of conduct in matters of this nature. Moreover, the law is clear that the alleged contemnor may not rely on its own inadvertence or misunderstanding to avoid a finding of contempt. *SEC v. Musella,* 818 F.Supp. 600, 606 (S.D.N.Y.1993). Grossman took a calculated risk in transferring the funds; it must now bear the responsibility of its actions. To that end, the Court concludes that Grossman is in contempt for violating the TRO entered May 5, 1994, as subsequently extended.

## CONCLUSION

Based upon the foregoing considerations, it is

ORDERED AND ADJUDGED that:

1. The SEC's motion for contempt and sanctions is GRANTED. The Law Offices of J.B. Grossman is hereby found in civil contempt of Court, and is directed to remit to the Court-appointed Receiver, within ten (10) days from receipt of this order, the sum of $91,500.00, plus interest calculated pursuant to 28 U.S.C. § 1961 from June 15, 1994, the date of demand by the Receiver, to the date of this order. Payment of this amount shall purge the aforementioned contempt. Should the Law Offices of J.B. Grossman fail to make the required remittance within the time allotted, the Court shall hold a hearing to determine the appropriateness of any additional sanction as a remedy to enforce the orders of this Court.

2. Grossman's motion for reconsideration is DENIED.

DONE AND ORDERED.

## ORDER ON EMERGENCY MOTION FOR STAY

THE CAUSE comes before the Court on the Law Practice of J.B. Grossman, P.A.'s ("Grossman") Emergency Motion for Stay of Contempt Order Pending Appeal, filed March 17, 1995.

Pursuant to *Fed.R.App.P.* 8(a), as a basis for a stay of an order pending appeal, the movant must show the following: (1) that the movant is likely to prevail on the merits on appeal; (2) that absent a stay, the movant will suffer irreparable damage; (3) that the adverse party will suffer no substantial harm from the issuance of the stay; and (4) that the public interest will be served by issuing the stay. *Garcia–Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir.1986); *Securities Investor Protection Corp. v. Blinder, Robinson & Co.,* 962 F.2d 960, 968 (10th Cir.1992). "Ordinarily the first factor is the most important." *Garcia–Mir,* 781 F.2d at 1453. Here, Grossman made no initial showing.[1] Instead, only upon the filing of its reply memorandum, after the filing of plaintiff's opposition memorandum, did Grossman address the aforementioned factors. Despite Grossman's neglect in this regard, the Court has considered the arguments advanced by Grossman in its reply. The Court concludes that Grossman has failed to state a proper case justifying the extraordinary remedy of a stay in this instance.

With regard to the first factor, substantial likelihood of success on the merits, the Court finds that Grossman has not met its burden of persuasion. Indeed, Grossman has merely restated the arguments it advanced both in its memorandum in opposition to the entry of a contempt order and at the hearing thereon, which arguments the Court has already addressed. Grossman has advanced no new argument in this regard that would tend to show that the

---

1. Indeed, Grossman failed to file a memorandum of law in support of his emergency motion, as required by Local Rule 7.1(A)(1), and the motion itself does not address these factors in any respect.

Court's order of contempt was in error. Grossman's arguments as to the second factor, irreparable harm, are similarly unpersuasive. Mere economic injury is not enough to justify a stay of a court order pending appeal. *Sampson v. Murray*, 415 U.S. 61, 90–92, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958)). Moreover, as the Court has already determined, other avenues of relief are available to Grossman.

Finally, as to the remaining two factors, the Court finds that any further delay in this matter will significantly hinder the Receiver's ability to discharge his duties for the protection of the defrauded investors' interests. Moreover, the Court does not accept Grossman's contention with regard to the contempt order's "chilling effect on access to counsel." The Court did not rule that attorneys could not be paid at all for their work, only that they could not be paid with *tainted* funds. Accordingly, it is hereby

ORDERED AND ADJUDGED that The Law Practice of J.B. Grossman, P.A.'s emergency motion for stay of contempt order pending appeal is DENIED. However, Grossman shall have ten (10) additional days from the original deadline within which to comply with the purging of contempt provision of that order.

DONE AND ORDERED.

### ORDER GRANTING MOTION FOR CLARIFICATION

THIS CAUSE came before the Court upon Worldwide Reporting Service's Motion for Clarification, filed March 29, 1995.

Upon due consideration, it is hereby

ORDERED AND ADJUDGED that Worldwide Reporting Service's motion is GRANTED. The Court's order of March 13, 1995, is hereby amended to reflect the following: "The Law Practice of J.B. Grossman's Motion for Clarification, filed November 4, 1994, is DENIED." It is further

ORDERED AND ADJUDGED that the Court's March 13, 1995, order does not preclude payment of costs incurred in the representation of the defendants from funds other than those connected with the instant litigation.

DONE AND ORDERED.