**Rafael FERNANDEZ–ROQUE, et al., Plaintiffs-Appellees,**

v.

**William French SMITH, etc., et al., Defendants-Appellants.**

No. 81–7853.

United States Court of Appeals, Eleventh Circuit.

March 4, 1982.

---

Daniel E. Fromstein, Lauri Steven Filppu, Attys., U. S. Dept. of Justice, General Litigation and Legal Advice Section, Crim. Div., Washington, D.C., Douglas P. Roberto, Asst. U. S. Atty., Atlanta, Ga., for defendants-appellants.

Myron Kramer and Deborah S. Ebel, Atlanta, Ga., for Fernandez-Roque.

Phillip A. Bradley, Atlanta, Ga., for Chao-Estrada.

Before TUTTLE, TJOFLAT and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

In this appeal the government seeks to have this Court determine the proper role of the judiciary with respect to the statutory procedures for granting amnesty. We must decline to do so for the reasons detailed below.

The present action is a consolidation of three suits filed by various groups of Cuban nationals. These plaintiffs-appellees represent a class of approximately 1800 Cubans who were detained by the Immigration and Naturalization Service upon their arrival in the United States as part of the 1981 Freedom Flotilla.[1] The original complaints sought only relief from detention. Appellees later amended their complaints alleging that they were "refugees" as that term is defined in the 1951 Convention Relating to the Status of Refugees and the 1967 Protocol Relating to the Status of Refugees,[2] [hereinafter Convention & Protocol], 19 U.S.T. 6223, T.I.A.S. 6577. Seeking the protections allegedly afforded them by the Convention & Protocol, the appellees asserted that they had a well-founded fear of persecution, if deported, because of their membership in a social group—the Freedom Flotilla.[3]

During a hearing conducted on August 19, 1981, the Cuban detainees expressed their concern that the government might deport them during the pendency of this litigation. The district court first attempted to obtain assurances from the government counsel that they would provide the Court with advance notice prior to deporting any of the Cuban detainees. When this endeavor proved unsuccessful, the district court entered a temporary restraining order enjoining the government from deporting any of the Cuban detainees pending further order of the court. This order, entered on August 19, 1981, remains in effect at this time.

On October 16, 1981, the government filed a notice of appeal on the theory that the TRO had ripened into a preliminary injunction and thus appellate jurisdiction exists pursuant to 28 U.S.C. § 1292(a)(1) (1976). The proper role of the judiciary with respect to the detention or release of excludable aliens is not implicated in this appeal. Rather, the only issue before us is the propriety of the district court's actions relating to the asylum claims. The government seeks to have the district court's order dissolved on the ground that the district court had no authority to interject itself into the statutory scheme provided for by the immigration laws. Specifically, the government contends that the district court was without habeas corpus jurisdiction because the appellees have failed to exhaust

1. Unlike the other approximately 122,000 Cubans who were granted parole status upon entry in the United States, the appellees were detained because it was believed that they had committed various crimes either in Cuba or the United States. A substantial number of these Cuban detainees were, however, subsequently found to be excludable solely due to lack of entry papers. *Fernandez-Roque v. Smith*, No. C81-1084A (Aug. 20, 1981). Moreover, during the oral argument of this case, the government indicated that nearly 1000 of the Cuban detainees have now been determined to be releasable pending final determination of their status.

2. The 1967 Protocol is a treaty to which the United States is a signatory party. The Protocol was opened for signature on January 21, 1967, and entered into force on October 4, 1967, 19 U.S.T. 6223 T.I.A.S. No. 6577, 606 U.N.T.S. 267 (entered into force for U.S. Nov. 1, 1968). Although the United States is not a party to the 1951 Convention, opened for signature on July 28, 1951, entered into force on April 22, 1954, 184 U.N.T.S. 137, the Protocol incorporates by reference the substantive provisions of the Convention. *Nicosia v. Wall*, 442 F.2d 1005, 1006, n.4 (5th Cir. 1971).

3. In support of these allegations, appellees filed separate affidavits of thirteen Cuban nationals who had voluntarily returned to Cuba. In their affidavits these Cubans stated that upon arrival in Cuba, they were incarcerated, tortured and subsequently set adrift in the ocean by Castro without supplies or navigational equipment. Appellees also filed a copy of the Country Report on Human Rights Practices—Cuba, prepared by the State Department, which described the cruel treatment accorded some refugees before they left Cuba. The government filed an affidavit of a state department official. This affidavit reflected the State Department's opinion that the only returning Cubans believed to have suffered persecution are those who returned without the Cuban government's consent and those who sought to remove relatives.

their administrative remedies and because the immigration statute requires individual rather than class-wide determinations of appellees' asylum claims. In addition, the Convention & Protocol do not, in the government's view, provide appellees with any greater rights than those accorded by the immigration statutes. Moreover, the government contends that any judicial inquiry into the appellees' asylum claims at this point in time would necessarily intrude in the field of foreign affairs which is committed to the Congress and the President by Article I, section eight and Article II, section two of the Constitution.

■ It is incumbent upon this Court to first determine whether our power to declare the law has been properly invoked. It is well established that as a general rule a temporary restraining order is not appealable. *E.g., Nelson v. Rosenthal*, 539 F.2d 1034, 1035 (5th Cir. 1976); *Chandler v. Garrison*, 394 F.2d 828 (5th Cir. 1967); *Connell v. Dulien Steel Products, Inc.*, 240 F.2d 414 (5th Cir. 1957), *cert. denied*, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958). A preliminary injunction is, however, an interlocutory decision reviewable by a court of appeals. 28 U.S.C. § 1292(a)(1) (1976); *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940); *Dilworth v. Riner*, 343 F.2d 226 (5th Cir. 1965). Thus, our jurisdiction in this appeal turns on the proper characterization of the district court's order. Since the "label attached to an order by the trial court is not decisive," we are required to consider several factors in reaching a decision concerning the true nature of the order. *Wright & Miller, Federal Practice and Procedure* Civil § 2962 (1973); *see Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Smith v. Grady*, 411 F.2d 181 (5th Cir. 1969).

■ One inherent characteristic of a temporary restraining order is that it has the effect of merely preserving the status quo rather than granting most or all of the substantive relief requested in the complaint. *See, e.g., American Motors Corp. v. FTC*, 601 F.2d 1329 (6th Cir.), *cert. denied*, 444 U.S. 941, 100 S.Ct. 294, 62 L.Ed.2d 307 (1979); *Siebert v. Great Northern Development Co.*, 494 F.2d 510 (5th Cir. 1974). The circumstances of the instant case indicate that in issuing this order, the district court intended merely to preserve the status quo in the face of the stated intention of the government to deport the appellees without notice to the court. Indeed, a hearing was originally scheduled for August 28, 1981, nine days after the order was issued. Although this hearing was postponed indefinitely, the order never assumed the function of providing appellees with the substantive relief requested in their amended complaints, that is, release from detention or a declaration of their substantive rights afforded by the Convention & Protocol.[4]

■ Another, and perhaps more important, characteristic of a temporary restraining order is the limitation on its duration. Rule 65 of the Federal Rules of Civil Procedure provides in pertinent part:

> Every temporary restraining order granted without notice shall ... expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or *unless the party against whom the order is directed consents* that it may be extended for a longer period....

Fed.Rule Civ.Proc. 65(b) (emphasis added). This rule has been interpreted to mean that a temporary restraining order continued without the consent of the parties beyond the twenty day maximum may be treated as a preliminary injunction. *Sampson v. Murray*, 415 U.S. 61, 86–88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974); *Connell v. Dulien Steel Products, Inc.*, 240 F.2d 414, 417 (5th Cir. 1957), *cert. denied*, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958). Con-

---

4. In their appellate briefs as well as during the oral argument of this case, the appellees requested various other types of relief, including judicial review of the statutory procedures conducted by the INS in their cases. While the jurisdictional analysis may be substantially altered by this evolution of the appellees' claims, it is clear that even this most recently asserted claim was not in any manner granted by the issuance of this order.

versely, a temporary restraining order issued or extended with the consent of all parties remains a nonappealable order. *Ross v. Evans*, 325 F.2d 160 (5th Cir. 1963); *cf. Haitian Refugee Center v. Civiletti*, 614 F.2d 92 (5th Cir. 1980) (preliminary injunction entered upon the consent of all parties cannot be appealed).

■■ On the facts of this case, we must conclude that the government consented to the extension of the temporary restraining order. The order was entered on August 19, 1981, and a hearing on appellees' motion for a preliminary injunction was scheduled for nine days later. The issues were fully briefed by both parties. The jurisdictional arguments contained in the government's brief were essentially the same as those asserted in this appeal. Prior to the date of the scheduled hearing, however, a disagreement arose between the court and the government as to the scope of this hearing. The court apparently indicated that before ruling on the motion for a preliminary injunction, it desired to hear evidence concerning the appellees' alleged fear of persecution if they were returned to Cuba.[5] The government, on the other hand, desired to have a hearing solely on the issue of jurisdiction. It asserted that any judicial inquiry, including an evidentiary hearing, into the merits of appellees' group asylum claim would intrude upon the President's constitutional power to conduct foreign affairs. As a result of this stalemate, no hearing was ever held. Yet the government never filed a motion to dissolve the temporary restraining order. It also never took any steps to obtain a limited ruling on jurisdiction.[6] Rather, as the record demonstrates, the government chose to allow the order to continue. Indeed, at a September 10, 1981 conference, government counsel informed

the court that it was "[n]ot at this point" seeking a hearing. Moreover, during the September 24, 1981 conference, the following colloquy occurred:

THE COURT: The next question, what do you want to do with the TRO? Are the parties satisfied to let the matter—let the temporary restraining order continue until some further time? That was the posture at which we left it at the September 10th meeting.

GOVERNMENT COUNSEL: At this point I don't now [sic] what the Government's position is. We do, in fact, have serious concerns about the jurisdictional question of the Court's authority to enter the injunction at all. . . .

THE COURT: I will be happy to vacate the restraining order as long as I get a representation by the Government that I get two days notice before you try and deport anybody.

GOVERNMENT COUNSEL: What I would like to do is leave it up in the air right now. . . .

Finally, we note that the district court stated in its order of November 4, 1981, that it "construed the representations of the government's attorneys, and the government's failure to move to dissolve the TRO, as consent to its extension."

■ We conclude that the order entered by the district court was clearly intended only to preserve the status quo in this case. We further conclude that since the government consented to the continuation of this order, the order remains nonappealable. Recognizing, however, that the essence of the government's complaint is the district court's failure to rule on the jurisdictional issue, we have decided to treat the government's appeal as a petition

5. In an effort to develop evidence on this issue, the appellees sought to depose various State Department officials concerning their knowledge of the existing conditions in Cuba. After the district court denied the government's motion for a protective order, this court stayed all discovery pending resolution of this appeal.

6. During the September 24, 1981 hearing in the district court, the government did suggest that the court certify this issue. Since the district court had made no determination regarding the jurisdictional issues, however, its refusal to certify the case at that time was entirely proper. *See Delta Air Lines, Inc. v. McDonnell Douglas Corp.*, 503 F.2d 239, 240 (5th Cir. 1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975); 16 *Wright, Miller, Cooper & Gressman, Federal Practice and Procedure*: Jurisdiction § 3930 (1977).

for a writ of mandamus. *See Huckeby v. Frozen Foods Express*, 555 F.2d 542, 549 n.14 (5th Cir. 1977); *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976); *United States v. Briggs*, 514 F.2d 794, 808 (5th Cir. 1975); *International Products Corp. v. Koons*, 325 F.2d 403, 407 (2d Cir. 1963).

■ A district court possesses inherent powers of equity sufficient to enable it to preserve the status quo until the question of its jurisdiction can be resolved. *E.g., United States v. Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *United States v. Hall*, 472 F.2d 261 (5th Cir. 1972); *Stewart v. Dunn*, 363 F.2d 591 (5th Cir. 1966). The prompt resolution of jurisdictional issues should generally be made in the first instance by the district courts. This principle applies with even greater force to novel controversies requiring a determination of the rights of illegal aliens and the scope of the constitutional powers of Congress and the President to conduct foreign affairs. The events giving rise to this appeal indicate, however, that without our guidance a hearing to determine solely the question of jurisdiction may not be promptly conducted.

■ Moreover, the district court's decision on the jurisdictional issues will initially control its otherwise discretionary power to conduct an evidentiary hearing on the merits of the appellees' group asylum claim. The government's contention that such a hearing would violate the separation of powers doctrine requires us to consider the policies underlying the statutory provision for certification. *See Gillespie v. United States Steel Corp.*, 379 U.S. 148, 154, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964); 28 U.S.C. § 1292(b) (1976).[7] In the absence of

an initial decision clarifying the various jurisdictional claims made by the appellees, we are today unable effectively to render an enlightened decision on the propriety of the district court's holding such a hearing on the merits. Accordingly, we believe that this case presents the truly "rare" situation in which it is appropriate for this court to require certification of a controlling issue of national significance. *See Ex Parte Tokio Marine & Fire Insurance Co.*, 322 F.2d 113, 115 (5th Cir. 1963); *see also Gillespie v. United States Steel Corp., supra; Nelson v. Heyne*, 491 F.2d 352, 354 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *compare Ernst & Ernst v. United States District Court, Southern District of Texas*, 439 F.2d 1288, 1293–94 (5th Cir. 1971), *Supp. Op.*, 457 F.2d 1399 (5th Cir. 1972). Under these exceptional circumstances, we find it necessary to invoke our discretionary powers under the All Writs Act, 28 U.S.C. § 1651(a) (1976), in order to supervise the judicial administration of this case and to prevent the defeat of appellate review. *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); *United States v. Denson*, 603 F.2d 1143 (5th Cir. 1979).

Since we find it imperative for the district court to resolve the question of its jurisdiction, we remand this case with the direction that it conduct forthwith only such hearing as is necessary to a determination of whether subject matter jurisdiction exists. Such hearing should be conducted without any discovery as to issues other than that of jurisdiction. Upon the conclusion of such hearing, the district court shall enter an opinion setting forth the reasons

---

7. This statute provides as follows:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such

order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (1976).

for its decision. To the extent, if any, that the appellees have altered the nature of the relief sought in their amended complaint, the district court shall specify the exact nature of the claim or claims as to which jurisdiction is now alleged to reside in the district court. The question of subject matter jurisdiction shall then be certified to this Court, pursuant to 28 U.S.C. § 1292(b), upon request by any party.

APPEAL DISMISSED.

TREATING THE APPEAL AS A PETITION FOR MANDAMUS, WE REMAND THE CASE TO THE DISTRICT COURT WITH DIRECTIONS.

The mandate shall issue forthwith.

TJOFLAT, Circuit Judge, specially concurring:

I concur fully in Judge Tuttle's opinion for the court, with this observation. The district court was duty bound from the inception of these consolidated cases to determine without delay whether it had subject matter jurisdiction over the plaintiffs' claims. Instead, the district court deferred this determination; granted the plaintiffs the preliminary injunctive relief they sought, albeit in the form of a temporary restraining order; and ordered the government to submit to sweeping, and in my view absolutely unwarranted, discovery.

We now order the district court to undertake the task it has deferred. This task can be accomplished merely by examining the allegations of the plaintiffs' complaints.