## In re McCLELLAND ENGINEERS, INC., et al., Petitioners.

### No. 84–2363.

United States Court of Appeals,
Fifth Circuit.

July 20, 1984.

James Patrick Cooney, Tobi Ann Tabor, Houston, Tex., for Oceaneering, et al.

G. Byron Sims, Houston, Tex., for Arabian and Crosby.

Marion McDaniel, Jr., Houston, Tex., for Global.

Joe J. Fisher, U.S. Dist. Judge, Beaumont, Tex., Benton Musslewhite, G. Robert Friedman, Paul Wesley Klinger, Jr., Houston, Tex., for appellee.

Before GEE, HIGGINBOTHAM and DAVIS, Circuit Judges.

GEE, Circuit Judge:

In these three cases filed by foreign persons seeking to recover damages for injuries suffered far from American shores, the district court denied motions to dismiss for *forum non conveniens.* Its careful and exhaustive opinion appears at *Munusamy v. McClelland Engineers, Inc.,* 579 F.Supp. 149 (E.D.Tex.1984). Although the court's opinion rests on novel premises, declines to determine what substantive law is to be applied at trial, and appears to question both the continuing validity of controlling precedent of this Court and that of the Supreme Court, the trial judge refused to certify his interlocutory order for appeal. The defendants petition for a writ of mandamus either directing the district court to vacate its order denying the *forum non conveniens* motions and dismiss the actions or to certify its order for appeal. We conclude that the court's refusal to certify in the circumstances presented constitutes an abuse of discretion; we vacate

that order. Since we do not doubt that the court will promptly proceed to certify in view of this conclusion and will abide our decision before proceeding to trial, we decline to issue a preemptory order at this time.

■ The court's opinion states few facts. We gather from the opinion and from the petition for mandamus that all three plaintiffs were foreign nationals and residents; none was a United States citizen. Each was injured or killed on an unconventional vessel engaged in offshore petroleum exploration or production in faraway coastal waters—those off Borneo, Saudi Arabia and Newfoundland. At least two of the vessels concerned apparently flew foreign flags. These circumstances suggest a choice-of-law inquiry applying the *Lauritzen/Rhoditis* factors,[1] as adapted to unconventional vessels by the law announced for this Circuit in *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015 (5th Cir. 1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). The first step in any *forum non conveniens* analysis is a determination of what substantive law governs the case. *De Oliveira v. Delta Marine Drilling Co.*, 707 F.2d 843, 845 (5th Cir.1983) ("In such cases we must decide what body of law applies, United States or foreign."). But instead of beginning with this first step and proceeding down the well-established path suggested by *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and its progeny, the court's reasoning followed a radically different course.

It commenced its inquiry by addressing the *Lauritzen/Rhoditis* factors. Our decisions have viewed them as the guides to judgment, but the district court reduced them to mere examples illustrating a rule of law that "the law of the flag or its functional equivalent, base of operations, [governs] the choice of law in maritime injury cases both here and abroad." 579 F.Supp. at 153. Next, it characterized our court's decision in *Chiazor* as rendering the significance of each *Lauritzen/Rhoditis* factor "sufficiently obscure or variable to justify any judicial conclusion." *Id.* Having thus disposed of controlling precedent and declined to decide what body of law applies, the court embarked on its own novel analysis of the applicable law.

As we understand that analysis, it commences with a 1936 Treaty to which the United States is a party, the Shipowner's Liability (Sick and Injured Seamen) Convention, 54 Stat. 1693. The court notes that the Convention requires "equality of treatment to all seamen [injured on the high seas] irrespective of nationality, domicile, or race." 579 F.Supp. at 156. Next the court seems to suggest that based on the Convention's desired equality of treatment for all seamen, standing alone, "the court should probably decline to choose foreign law when it imposes a lower standard of care or relief than domestic law." 579 F.Supp. at 157. Finally, the court proceeds to observe that since "[i]t is inconceivable that a federal admiralty court would dismiss an American seaman suing a United States vessel on *forum non conveniens* grounds, [the] court must treat these foreign seamen the same." 579 F.Supp. at 159. Accordingly, in the court's view, any foreign seaman injured on the high seas (as these may not have been) is entitled to access to United States courts and United States remedies, apparently whether he is suing a United States vessel or not; and to

1. As the trial court observed, 579 F.Supp. at 152: The Supreme Court addressed choice of law in maritime injury cases in three consistent opinions: *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Eight "factors" are said to influence the choice of law in maritime injury cases:

(1) place of the wrongful act;
(2) law of the flag;
(3) allegiance or domicile of the plaintiff;
(4) allegiance of the defendant shipowner;
(5) place of the contract;
(6) inaccessibility of a foreign forum;
(7) law of the forum;
(8) defendant's base of operations.

For the court's use of "influence," however, we would prefer "govern."

deny him that access is to deny him "equality of treatment." It is not our place or function at this stage of these matters to assay the merits of the district court's reasoning and analysis; suffice it to say that it represents a candidly novel and clear departure from our holdings and those of the Supreme Court. For that reason, and since the district ccurt has declared its intention not to rule on what law applies "until all the evidence is presented,"[2] we conclude, with great reluctance, that we must intervene.

Such an intervention, while rare, is not without respectable precedent. *Fernandez-Roque v. Smith,* 671 F.2d 426 (11th Cir.1982). Indeed, we have ourselves indicated a willingness, in rare circumstances, to intervene directly by mandamus even in the district court's disposition of the *forum non conveniens* motion itself:

> The question of *forum non conveniens* arises in this case in the form of a motion to dismiss rather than a motion to transfer under section 1404(a) only because the alternative forum is a foreign nation and thus no transfer is possible. *See id.* We perceive no reason why a petition for a writ of mandamus aimed at the district court's decision on the applicability of *forum non conveniens* should be treated any differently when based on a motion to dismiss than when based on a motion to transfer, and we therefore turn to the standard applied to petitions involving district court decisions on section 1404(a) transfer motions.
>
> In *Ex Parte Charles Pfizer & Co.,* 225 F.2d 720 (5th Cir.1955), we held that a writ of mandamus could not be issued to direct the district courts to enter or vacate orders of transfer under section 1404(a) absent "a failure of the District Court to correctly construe and apply the statute, or to consider the relevant factors incident to ruling upon a motion to

transfer, or unless it is necessary to correct a clear abuse of discretion." 225 F.2d at 723. Our decisions make it clear that mandamus is an extremely limited means of challenging the district court's discretion in this area; as *Pfizer* indicates, a party seeking such a writ must demonstrate a *failure on the part of the district court correctly to construe and apply the relevant factors, or must show some clear abuse of discretion in the court's decision on the forum non conveniens issue.* See Garner v. Wolfinbarger, 433 F.2d 117, 120–21 (5th Cir. 1970); *Ex Parte Pharma-Craft Corp.,* 236 F.2d 911 (5th Cir.1956); *In re First National Bank of Montgomery,* 233 F.2d 876 (5th Cir.1956).

*Castanho v. Jackson Marine, Inc.,* 650 F.2d 546, 550 (5th Cir.1981) (emphasis added).

Such an intervention would be a drastic one indeed. Since our action today is far less so, we conclude that it is justified on a correspondingly lesser showing: the demonstration of a substantial likelihood of "a failure on the part of the district court correctly to construe and apply the relevant factors, or ... some clear abuse of discretion in the court's decision on the *forum non conveniens* issue." *Id.* That demonstration, we conclude, has been made here.[3] We therefore request that the district court certify its interlocutory order for appeal. The denial of mandamus is without prejudice. It is so

ORDERED.

---

**2.** 579 F.Supp. at 157.

**3.** In doing so, we are driven to observe that the parties may experience great confusion in tendering evidence at a time of trial when the dispositive issues—those under the law of Indonesia, or Dubai, or Canada, or the United States—are unknown. Whether these issues would differ significantly from each other depending on the law to be applied we do not know today. We do know, however, that they may. That suffices for present purposes.