United States Court of Appeals,

Eleventh Circuit.

No. 95-4391.

David LEVINE, Receiver-Appellee,

Securities Exchange Commission, Plaintiff-Appellee,

v.

COMCOA LTD., a/k/a Comcoa Ltd., Thomas W. Berger, Defendants,

J.B. Grossman, Law Practice, Movant-Appellant,

Sun-Sentinel Company, Mobitel Services Corp., a Delaware Corporation, et al., Claimants.

Dec. 1, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-8256-CIV-SH), Shelby Highsmith, Judge.

Before EDMONDSON, Circuit Judge, HILL, Senior Circuit Judge, and MILLS[*], District Judge.

EDMONDSON, Circuit Judge:

Law Practice of J.B. Grossman, P.A., appeals the district court's finding of contempt for its transfer of funds from the trust account of its client, Comcoa Ltd. ("Comcoa"), to the law firm's operating account in violation of a court order. We affirm.

Before January 1994, Comcoa retained J.B. Grossman as counsel.[1] In mid-January 1994, Grossman told Comcoa to establish a large retainer fee to assure Grossman's availability in the event of an asset-freezing action. This retainer was placed in a trust

_____

[*]Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

[1]While it is appellant Law Practice of J.B. Grossman, P.A. which was held in contempt below, the law firm's sole involvement in this case was through the actions of J.B. Grossman, a lawyer. As such, this opinion will describe the behavior in this case as being that of Mr. Grossman rather than that of the law firm.

account maintained by Grossman on behalf of Comcoa. Before April 1994, the Division of Enforcement of the Securities and Exchange Commission ("Division") began an informal inquiry into the business activities of Comcoa.

On 5 May 1994, the Division filed an *ex parte* Motion for Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, Temporary Restraining Order ("TRO"), Order Freezing Assets, Order Appointing Receiver, Order for an Accounting, Order Prohibiting Destruction of Documents and an Order Expediting Discovery. On 6 May 1994, at 9:25 AM, a United States District Judge entered an order, among other things, granting a TRO and freezing Comcoa's assets, appointing a Receiver, and notifying the parties of a hearing on 16 May to consider a preliminary injunction.[2]

On 11 May Comcoa filed, among other things, an Emergency Motion to Vacate the TRO, a Motion to Dismiss for Lack of Subject Matter Jurisdiction and a Motion for Preliminary Hearing on Defendants' Motion to Dismiss.

On 16 and 17 May the district court did hold a *preliminary injunction hearing* and also heard Defendants on their Motion to Dismiss for Lack of Subject Matter Jurisdiction. Grossman was attorney of record for Comcoa at this hearing. Over the two days, the district judge heard argument from counsel and received testimony from seven witnesses; the hearing was completed.[3] At

---

[2]The May 6 order stated that the hearing on May 16 was to show cause "why a Preliminary Injunction ... should not be granted...."

[3]Mr. Grossman makes no contention that he was unable at this hearing to set forth fully the reasons for which he and Comcoa believed no preliminary injunction should issue.

the end of the hearing on 17 May, the district court told both parties that it was extending the 6 May order until the court ruled on the substantive motions by Defendants. The district court said the order would be extended in all respects and specifically said the order included the asset freeze. The district court then asked if either party had anything further or any questions. Grossman replied, "No, sir."

On 6 June 1994, Grossman called the district court to find out if an order had been issued. At first, Grossman was told a preliminary injunction had been issued; but later the district court's assistant said a preliminary injunction had not been issued. Grossman considered the court's order to have expired. And he, on 6 June, transferred from Comcoa's trust account about $92,000 of the retainer funds into his law firm's operating account.[4] About this same time, he filed for Comcoa an Emergency Motion for Release of Assets, based on the expiration of the TRO.[5]

---

[4]The order stated that Comcoa and their "attorneys ... are [] restrained from, directly or indirectly, transferring ... any assets or property owned by, controlled by, or in the possession of [Comcoa]". In the contempt proceeding the court below concluded that the asset freeze extended to the trust account, and this determination is not in dispute. Never does Grossman contend that he was unaware that the order of the court, if still in force, prohibited this conduct.

[5]Some confusion exists on the precise sequence of events on June 6 and 7. The district court appears to have found that Grossman first filed the motion for release of funds and then—before the motion could be decided—transferred the money. Grossman's initial brief says that he transferred the funds on 6 June and filed the motion for release of assets the next day. His reply brief says that the motion was filed 6 June, the same day that he transferred the funds, but later in the day. And, the docket sheet indicates the motion was not filed until 7 June. In any event, what is undisputed is that Grossman's transfer of funds was a unilateral act done without the approval of any court.

Also on 7 June, the district court entered an Order of Preliminary Injunction *nunc pro tunc* to June 3, 1994; and, the district court denied Defendants' Emergency Motion.

In August 1994, the Division filed a Motion for an Order to Show Cause to hold Grossman in contempt for violating the district court orders when he transferred the retainer funds. The district court entered an order holding Grossman in contempt of court for his transferring of the funds into his own account. He now appeals this ruling.

Rule 65 of the Federal Rules of Civil Procedure says that a TRO can last only 10 days, unless extended, and cannot be extended beyond 20 days without the consent of the restrained party.[6] Grossman says that he never consented to an extension; and for the sake of our discussion, we accept that he did not consent.

The Supreme Court has said a TRO that is continued beyond the time permissible under Rule 65 should be treated as a preliminary injunction. *See Sampson v. Murray,* 415 U.S. 61, 87, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974) (stating "[w]here an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified"). This

---

[6]The parties argue whether the initial 10 days and the 20 day extension should be calculated by excluding weekends and holidays. This argument is largely irrelevant because even if we take the calculation which excludes weekends and holidays, the TRO would expire at 9:25 AM on June 6. And, because the district court did not enter the written preliminary injunction order until June 7 (although it was entered *nunc pro tunc* to June 3), the TRO would have expired unless consent were given. We do note that even under the calendar day approach, continuing the hearing into the second day constituted a for-cause extension of the initial 10 day period.

treatment is especially appropriate where, as in this case, there has been notice to the parties, a full hearing on a preliminary injunction, and then a stated and clear decision from the bench to extend the terms of the restraining order indefinitely, that is, until the court notified the parties otherwise.[7]

Very likely, Grossman's client, Comcoa along with its agents and attorneys, was under a preliminary injunction once the judge spoke at the end of the hearing;  but we need not go that far.  If the TRO had not become a preliminary injunction before, it became a preliminary injunction when the TRO, as orally extended by the district court, went beyond the time permissible under Rule 65. Thus, the proper course of conduct for Grossman was to treat the TRO as an erroneously granted preliminary injunction and to appeal.[8]  *See Clements Wire & Mfg. Co. v. NLRB,* 589 F.2d 894, 896

---

[7]We accept that, where there has been no notice to the parties and no hearing on the various factors involved in considering a preliminary injunction, a TRO continued past the Rule 65 limit falls of its own weight.  *See Granny Goose v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974);  *Hudson v. Barr,* 3 F.3d 970 (10th Cir.1993).  In *Granny Goose,* the district court "did not indicate that it was undertaking a hearing on a preliminary injunction."  *Granny Goose,* 415 U.S. at 441, 94 S.Ct. at 1125. And, neither party made an attempt to present its position on whether a preliminary injunction should issue.  *Id.*

[8]That a hearing on a preliminary injunction had been held and that appellate review was, therefore, available under *Sampson,* makes this case materially different from *Granny Goose.* Even in *Pan American World Airways, Inc. v. Flight Engineers' Int'l Assn.,* 306 F.2d 840, 842 (2d Cir.1962), the Second Circuit treated a TRO extended following the commencement of a hearing on the merits as a preliminary injunction for purposes of appeal. No good reason exists to limit this rule to one of appellate jurisdiction only:  a preliminary injunction is a preliminary injunction.

Two concerns about TROs are reflected in the case law and in Rule 65.  First, restrained parties often have no

(5th Cir.1979).

We believe the instances when lawyers can be told by the district court in no uncertain terms not to do "X" and, yet, the lawyer can go on to do "X" with impunity are (and ought to be) few and far between, especially where the appellate courts—as in this case—are open to the lawyer to settle the matter in an orderly way, but the lawyer pursues no appeal. In these circumstances, for Grossman just to disregard the district court's clear order, based on his personal belief that it was invalid, was not merely bold; it was bad. We conclude his conduct warrants a determination of contempt.[9] The district court was within its discretion to hold

---

opportunity for a hearing and may not know precisely what conduct is prohibited. Second, a restrained party may not obtain appellate review of a TRO.

Our holding respects both these concerns; Grossman and Grossman's client had the opportunity to contest the preliminary injunction (and had precise notice of the enjoined conduct) and also could have obtained appellate review of the injunction.

[9]Although we decide this case under Rule 65, we do *not* decide that all of the district courts' powers to give binding orders to a lawyer and all of a lawyer's legal duties to obey the orders of a court with subject-matter jurisdiction over the controversy in which the lawyer appears as counsel of record flow from the Federal Rules of Civil Procedure only.

We are heartsick when we observe that Mr. Grossman, an officer of the United States' Courts, acted personally and directly in disobeying the straightforward instruction of a United States District Judge and did so just for money, his fee.

This case is not one in which a lawyer's client acted, and because the lawyer did not stop his client, the lawyer is facing contempt. Mr. Grossman, himself, acted contrary to plain instructions given to him when he was face-to-face with the court. In such circumstances, the power of district courts to discipline their officers may possibly be considerably broader-based than that granted by Rule 65 or even the Federal Rules of Civil Procedure generally. Put

Grossman in contempt of court for violating its order.

The order of contempt against the Law Practice of J.B. Grossman, P.A., is AFFIRMED.

HILL, Senior Circuit Judge, concurring, dubitante:

The court today affirms contempt sanctions against a lawyer for doing what he knew the judge had ordered him not to do. I am not attracted to this lawyer's conduct. The problem arose, however, because the party who petitioned for and obtained the TRO stood silent while the order inadvertently expired without counselling the court of the requirements for its extension. One would expect more from the agency appearing here. It has obtained temporary restraint before.[1] I am not pleased with the performance of *any* of our cast of characters.

An *ex parte* temporary restraining order is an extreme remedy to be used only with the utmost caution. Rule 65(b) of the Federal Rules of Civil Procedure imposes strict restrictions on its scope and specific time constraints for its duration:

> Every temporary restraining order granted without notice ... shall expire by its terms within such time after entry, not to

differently, whether or not the client Comcoa was still validly restrained about its funds, perhaps Mr. Grossman, as an officer of the court, remained under a valid restraint. But given the way this controversy was decided by the district court and has been briefed and argued to us, we will pass over the question of Mr. Grossman's professional responsibilities and of the district court's inherent powers to supervise and to discipline its subordinate officers.

[1]An electronic search using only the words "Securities and Exchange Commission" and "temporary restraining order" or "TRO" yielded 11,541 cases. We are not suggesting that *all* these cases are similar to the instant situation, nor are we implying we have read each case. We would suggest that counsel representing the SEC are likely to have explored the requirements for effective extension of TROs from time to time.

exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.[2]

Fed.R.Civ.P. 65(b).

The importance of these restrictions was emphasized by the Supreme Court in *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). In *Granny Goose,* a state court issued a temporary restraining order to enjoin the local union from striking. Two days later, the case was removed to federal court. The union moved to dissolve the restraining order. After a hearing, the court denied the union's motion. The union went on strike some months later. The district court held the union in contempt for violating the TRO. The Ninth Circuit reversed, and the Supreme Court affirmed the appellate court.

The Court held that the union violated no order when it resumed its strike because no order was in effect at that time. The Court rejected the employer's argument that the district court's hearing on the union's motion to dissolve the restraining order was a hearing on a preliminary injunction, or that its order denying the motion should be construed as a grant of a preliminary injunction. Regardless of the district court's intent in the hearing, the TRO did not survive the expiration of the Rule 65(b)

---

[2]The district court found that Grossman consented to the extension of the TRO. The majority opinion, however, accepts without comment Grossman's contention that he did not. I concur in this conclusion and note that, if Grossman had consented to the extension, the TRO would have remained an unappealable interlocutory order. *Fernandez-Roque v. Smith,* 671 F.2d 426, 430 (11th Cir.1982).

time limits because the district court did not follow the appropriate procedure. The Supreme Court held:

> Where a hearing on a preliminary injunction has been held after issuance of a temporary restraining order, and where the District Court decides to grant the preliminary injunction, the appropriate procedure is not simply to continue in effect the temporary restraining order, but rather to issue a preliminary injunction, *accompanied by the necessary findings of fact and conclusions of law.*

415 U.S. at 443, 94 S.Ct. at 1126 (emphasis added); *see also Hudson v. Barr,* 3 F.3d 970, 975 (6th Cir.1993) (indefinite continuation of TRO held improper; government's consent to TRO, pending hearing on motion for preliminary injunction, ended on day hearing was supposed to occur); Fed.R.Civ.P. 52(a) ("... and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.").

Our panel's opinion today purports to accept *Granny Goose* but characterizes its holding as "... where there has been no notice to the parties and no hearing on the various factors involved in considering a preliminary injunction, a TRO continued past the Rule 65 limit falls of its own weight." This interpretation reads out of Rule 65(b) any requirement for *consent* to validate any extension of a TRO beyond the twenty-day limit. *See Connell v. Dulien Steel Products, Inc.,* 240 F.2d 414, 417 (5th Cir.1957). Under the Rules, it is not just notice and a hearing that allows a TRO to become a preliminary injunction, but findings of fact and conclusions of law which *adjudicate the property right involved* thereby satisfying due process.

*Granny Goose* also emphasizes the safeguards built into Rule 65

to prevent the serious penalties imposed when one is found to be in contempt for violating court injunctions:

> [O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.

> \* \* \* \* \* \*

> It would be inconsistent with this basic principle to countenance procedures whereby parties against whom an injunction is directed are left to guess about its intended duration. Rule 65(b) provides that temporary restraining orders expire by their own terms within 10 days of their issuance. Where a court intends to supplant such an order with a preliminary injunction of unlimited duration pending a final decision on the merits or further order of the court, it should issue an order clearly saying so. And where it has not done so, *a party against whom a temporary restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rule 65(b).*

415 U.S. at 444-45, 94 S.Ct. at 1126-27 (emphasis added) (footnote omitted).

No case is cited to us in which the imposition of contempt for violation of an indefinitely-extended TRO has been upheld. Nevertheless, we hold today that "[f]or Grossman just to disregard the district court's order based on his personal belief that it was invalid, is conduct that warrants a determination of contempt." I do not concur in this, but I do not view it as a basis for the judgment. The opinion seems to say that, notwithstanding *Granny Goose,* it was not "reasonable" for Grossman to assume that the TRO had expired as Rule 65(b) prescribes.[3]

---

[3]I believe that this conclusion denies Grossman the benefit of that to which he is entitled under *Granny Goose.* Rule 65(b) is clear that no TRO may be extended beyond the twenty days without the consent of the party restrained. On May 27, 1994, after the expiration of twenty calendar days, Grossman requested the return of some of his client's funds from the Receiver who had custody of them. The Receiver disagreed about the calculation of time, stating that the time would expire on June

This holding is based upon *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). In *Sampson,* a government employee sought a temporary injunction against her dismissal from employment as a probationary employee. The district court granted a temporary restraining order. Later, after an adversary hearing at which the government declined to produce the discharging official as a witness to testify as to the reasons for the dismissal, the district court ordered the temporary restraint continued until the witness appeared. In considering the issue of appellate jurisdiction over the order the Supreme Court wrote:

> A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions would have virtually unlimited authority over the parties in an injunctive proceeding. In this case, where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified. Therefore, we view the order at issue here as a preliminary injunction.

*Id.* at 87–88, 94 S.Ct. at 951–52.

An order extending a TRO beyond the statutory twenty-day limit, therefore, is treated as a preliminary injunction. One might well conclude that the conversion of an indefinitely-extended TRO into a preliminary injunction would be for purposes of appeal only, conferring jurisdiction on the court of appeals for the sole

---

1.  On June 3, Grossman inquired of the district court whether a preliminary injunction had issued. The staff advised that no order had been issued. On June 6, Grossman again inquired of the Clerk of Court and of the district court's chambers whether any injunction had issued. Informed that no order had issued nor was any order forthcoming, Grossman transferred his client's retainer from a trust fund to Grossman's law firm operating account in partial payment of his fees. As far as the record reveals, Grossman did what Rule 65(b) permitted him to do, and as his client instructed him to do with the client's funds.

purpose of voiding the invalidly extended TRO.[4]

This was exactly the approach of the Court of Appeals for the District of Columbia Circuit in *National Mediation Bd. v. Air Line Pilots Association, Int.,* 323 F.2d 305 (D.C.Cir.1963). In that pre-*Sampson* case, the Court of Appeals held that an order extending a TRO beyond the twenty days allowed by Rule 65(b) is tantamount to the grant of a preliminary injunction, thus conferring jurisdiction on the court of appeals. The court further held, however, that since the restraining order was not supported by findings of fact and conclusions of law as required by Rule 52(a), it was not a valid preliminary injunction and remanded the case to the district court with directions to dissolve the void order. *Id.* at 305-06.[5]

This result was later endorsed by Justice Marshall in his dissent in *Sampson.* In *Sampson,* the Supreme Court went beyond the mere exercise of appellate jurisdiction and considered the *merits* of the application for a preliminary injunction. This appeared to be a significant extension to Justice Marshall who wrote:

---

[4]As noted earlier, until today there has never been a case affirming sanctions for contempt for violation of an indefinitely-extended TRO.

[5]An earlier approach adopted by two circuits upon finding that temporary restraining orders had expired by virtue of the Rule 65(b) limitations, was to hold that there was no existing order to review and dismiss the appeals as moot. *Benitez v. Anciani,* 127 F.2d 121 (1st Cir.1942), *cert. denied,* 317 U.S. 699, 63 S.Ct. 439, 87 L.Ed. 559 (1943) and *Southard & Co. v. Salinger,* 117 F.2d 194 (7th Cir.1941). Subsequent courts have distinguished these cases where, as here, a district court has ordered an indefinite extension of the TRO. *See Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n,* 306 F.2d 840, 842 (2d Cir.1962) ("In the present case, because the district judge extended the order beyond the twenty day period, we consider that the temporary restraining order became an appealable preliminary injunction.").

It is suggested that if an indefinitely extended temporary restraining order remained unappealable, the District Court would have virtually unlimited authority over the parties in an injunctive action. At the outset, this cannot justify this Court's reaching the merits of Mrs. Murray's claim for a preliminary injunction. Even if the order entered by the District Court is appealable, it should be appealable only for the purposes of holding it invalid for failure to comply with Rule 52(a). This was the precise course taken by the Court of Appeals for the District of Columbia Circuit in *National Mediation Board, supra,* on which the majority relies.

\* \* \* \* \* \*

Here, instead, we find the Supreme Court determining that although the District Court had jurisdiction to grant injunctive relief, the equities of Mrs. Murray's case did not support a preliminary injunction, when neither the District Court nor the Court of Appeals has yet confronted the latter issue. I do not believe this makes for sound law.

*Sampson,* 415 U.S. at 98, 94 S.Ct. at 957 (footnote omitted).

I recognize that this reasoning was rejected by the Court in

*Sampson.* Justice Rehnquist, for the Court, wrote:

Our Brother Marshall, in his dissenting opinion, nevertheless suggests that a district court can totally or partially impede review of an indefinite injunctive order by failing to make any findings of fact or conclusions of law. It would seem to be a consequence of this reasoning that an order which neglects to comply with one rule may be saved from the normal appellate review by its failure to comply with still another rule. We do not find this logic convincing. Admittedly, the District Court did not comply with Fed.Rule Civ.Proc. 52(a), but we do not think that we are thereby foreclosed from examining the record to determine if sufficient allegations or sufficient evidence supports the issuance of injunctive relief.

*Id.* at 88 n. 58, 94 S.Ct. at 951 n. 58.

By reviewing the merits, the Supreme Court appears to have held that the TRO *cum* preliminary injunction is a valid restraining order. Otherwise, the review on the merits would be a mere

intellectual exercise which the Court is not wont to do.[6]  So, I am instructed by the Court that the indefinite extension of a TRO not only transforms the TRO into a preliminary injunction for purposes of appeal, but also into a valid injunction.[7]

Clearly, some problems emerge.  We uphold the contempt imposed for violation of an expired TRO in this case at the expense of making unclear the duration of emergency orders that deprive a party of the free use of his or her property.  This is not appealing in a free society.  Furthermore, we eviscerate the protection afforded by Rule 65(b).  If a TRO can metamorphose into a preliminary injunction by the expiration of the very time limits imposed as safeguards against the indefinite restraint over one's

---

[6]Upon review of the merits, the Court analyzed whether petitioner had adequately demonstrated the irreparable harm necessary to secure injunctive relief, concluded that she had not done so.  Therefore, although *valid,* the Court found the TRO *unlawful* in that it was incorrectly granted.  The Court reversed the decision of the court of appeals which had upheld the district court's grant of the TRO.

[7]This determination is part of what is required in order for this court to uphold the contempt imposed upon Grossman in this case.  Unlike criminal contempt, civil contempt may be upheld only if the disobeyed order was *valid and lawful. Smith v. Sullivan,* 611 F.2d 1050, 1052-54 (5th Cir.1980).

Having been persuaded that the indefinitely extended TRO becomes a valid preliminary injunction, the second step would be to consider the injunction on the merits to determine whether it was granted according to law, *i.e.,* whether the applicant demonstrated the requisite irreparable harm and inadequate legal remedies.

In this case, however, Grossman does not appear to challenge the injunction on its merits, choosing to argue only that the TRO was void after the expiration of the statutory time limits.  Therefore, my inquiry is limited to the validity of the order disobeyed.

property, then Rule 65(b) provides no protection at all.[8]  As the Second Circuit has observed:

> It is because the remedy is so drastic and may have such adverse consequences that the authority to issue temporary restraining orders is carefully hedged in Rule 65(b) by protective provisions.  And the most important of these protective provisions is the limitation on the time during which such an order can continue to be effective.

*Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n,* 306 F.2d 840, 843 (2d Cir.1962) (holding, however, that a TRO indefinitely extended by a district court becomes a preliminary injunction so that it may be reviewed).

I confess to a temptation to conclude that *Sampson* is overruled by *Granny Goose,* or that, at least, because the restraint imposed in *Sampson* was found to be unlawful, the implications from the merits review are dicta.  I do not undertake, however, to limit Supreme Court precedent.  If our reading of *Sampson* is correct, it requires that, for the first time, we affirm a contempt imposed for violating a TRO extended beyond the statute's limit.

Not without doubt as to this conclusion, I **CONCUR.**

---

[8]This approach does, however, have the virtue of easing the burden on over-worked district judges.  It appears that now they may avoid the time-consuming chore of finding facts and making conclusions of law, and simply allow the passage of time to accomplish what many cases say they may not do—turn a TRO into a preliminary injunction without going to this trouble.