Gordon BARROW, Plaintiff,

v.

Carolyn GRAHAM, et al., Defendants.

No. CIV. A. 00–2971 (PLF).

United States District Court,
District of Columbia.

Dec. 15, 2000.

John F. Karl, Jr., William P. Farley, Washington, DC, for Plaintiff.

Mark D. Back, Thomas Foltz, Stratton C. Strand, Office of Corporation Counsel, Washington, DC, for Defendants.

## MEMORANDUM OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on plaintiff Gordon Barrow's motion for a temporary restraining order to prevent Carolyn Graham, Deputy Mayor for Children, Youth and Families and Interim Director of the Department of Human Services ("DHS"), and the District of Columbia from terminating his employment effective today, Friday, December 15, 2000. Plaintiff seeks an order that will preserve the status quo until such time as the Court can make a determination on the merits of Mr. Barrow's claim. Plaintiff's motion was filed on December 13, 2000, and defendants' opposition was filed on December 14, 2000. Later on December 14, 2000, the Court heard argument on plaintiff's motion. Upon consideration of the arguments made by counsel for the parties in their briefs and at the hearing, the Court will grant plaintiff's motion for a temporary restraining order.

## I. BACKGROUND

Before being placed on administrative leave eleven months ago, Mr. Barrow served as Chief of the Clinical Services Division in the Mental Retardation and Developmental Disabilities Administration ("MRDDA"). MRDDA is a component of

DHS and was created to develop and run comprehensive services for District of Columbia residents who are mentally retarded or who suffer other developmental disabilities.

In response to a series of articles published in *The Washington Post* detailing the problems with group homes run by MRDDA, including the abuse of group home residents and the deaths of 116 of the residents since 1993, Carolyn Graham announced that several high-ranking officials at MRDDA would be fired. At a January 18, 2000 press conference, Mayor Williams promised to overhaul MRDDA, including the termination of five employees he felt were responsible for the problems in MRDDA group homes. An article in *The Washington Post* reporting the Mayor's press conference revealed that the District of Columbia intended to terminate Mr. Barrow.

On January 18, 2000, Ms. Graham sent Mr. Barrow a notice of proposed termination enumerating seven different grounds for his termination. In accordance with Section 1613 of the D.C. Personnel Regulations, Mr. Barrow was granted an administrative review by a "disinterested designee," Theresa Cusick, who after a hearing concluded that none of the seven charges against Mr. Barrow was supported by the facts. On May 2, 2000, Ms. Graham sent Mr. Barrow a letter withdrawing the notice of proposed termination subject to further investigation.

On September 7, 2000, Ms. Graham sent Mr. Barrow a second notice of proposed termination setting forth three new charges supporting his removal. Mr. Barrow denied these charges in a written response submitted on September 14, 2000 and asked for a hearing. Ms. Graham originally selected Robert James to be the "disinterested designee," but then replaced Mr. James with Brian Godette. Mr. Barrow objected to the selection of Mr. Godette and Mr. Godette therefore also was replaced. Eventually Lori Parker was appointed as the third "disinter-ested designee." Ms. Parker issued a report on November 28, 2000, agreeing with Ms. Graham that Mr. Barrow should be terminated. On December 6, 2000, Mr. Barrow received a final notice of termination from Ms. Graham setting December 15, 2000 as his termination date.

Plaintiff alleges that he first learned of Ms. Parker's appointment as the "disinterested designee" on November 28, 2000, when he received her report agreeing that he should be terminated. Ms. Parker did not hold a hearing and did not contact or talk with Mr. Barrow before issuing her report. Ms. Graham had represented in the September 7, 2000 notice that Mr. Barrow may receive a hearing, but Ms. Parker explained that her mandate did not require her to hold a hearing. Mr. Barrow contends that Ms. Parker should have conducted a hearing because he satisfied the requirements of Section 1613.4 of the D.C. Personnel Regulations, which provides that an employee is entitled to a hearing if (1) the proposed action is termination, (2) there is a dispute of material fact, and (3) the employee requests a hearing.

In her report, Ms. Parker addressed the seven grounds enumerated in the January 18, 2000 notice of proposed termination rather than the three grounds listed in the September 7, 2000 notice. The report does not appear to address Mr. Barrow's written response of September 14, 2000. Indeed, it is not clear whether Ms. Parker was even aware of the second notice of proposed termination issued by Ms. Graham on September 7, 2000 or of Mr. Barrow's response to the charges submitted on September 14, 2000. Ms. Parker's report does not make reference to or even acknowledge Ms. Cusick's original report in which all seven grounds for Mr. Barrow's termination were found to be without merit. It is unclear whether Ms. Parker was even aware that this report existed.

## II. DISCUSSION

The purpose of a temporary restraining order is to preserve the status

quo for a limited period of time until the Court has the opportunity to pass on the merits of the demand for a preliminary injunction. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir.1989); *Fernandez–Roque v. Smith*, 671 F.2d 426, 429 (11th Cir.1982). In the absence of facts that would enable a court fully to assess the merits of the parties' respective positions, a TRO may issue to preserve the status quo and to prevent imminent harm until a hearing on the request for a preliminary injunction may be held. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d at 1124. While the Court must still consider the traditional four-part test for injunctive relief even at the TRO stage, the short duration of a TRO, the imminence of the harm and the failure of a respondent to provide any facts to counter a petitioner's claims, taken together, may justify the grant of a TRO to preserve the status quo.

While plaintiff raises numerous grounds for relief in his complaint and motion for temporary restraining order, the Court need not reach most of those issues until the preliminary injunction hearing. What deeply troubles the Court at this stage, however, is the apparent total lack of process afforded Mr. Barrow with respect to the decision to terminate. If plaintiff's assertions of fact are true, Ms. Parker was either totally unaware of or completely ignored the second notice of proposed termination and Mr. Barrow's response to the three enumerated charges. She denied Mr. Barrow a hearing despite the Personnel Regulation's provision that he was entitled to one, and she made a decision based on old facts and old allegations, all of which had been rejected by a prior disinterested designee. It appears that Ms. Parker did not have either the "complaint" setting forth the new charges or the "answer" to those charges and failed to provide a hearing as required. She nevertheless rendered a decision that will lead to Mr. Barrow's termination today. If Mr. Barrow's allegations are true, the District provided him no process at all before de-

ciding to terminate his employment. Moreover, because the defendants have had so little time to respond to plaintiff's motion—and refused to grant a brief delay of the effective date of termination in order to give itself time—counsel who appeared in Court had no facts at their command and could not advise the Court whether Mr. Barrow's assertions are true, partly true or false.

■ If the facts are as Mr. Barrow represents, there is a very high likelihood that he will succeed on the merits of his claim. Under plaintiff's version of the facts, the District utterly failed to provide him with the process to which he was due both under the Constitution and under the District of Columbia's own regulations. If Mr. Barrow is correct, Ms. Parker did not consider the charges leveled against him in the second notice of proposed termination or Mr. Barrow's response to those charges. Instead, without the benefit of a hearing or without even speaking to Mr. Barrow, Ms. Parker based her decision on the seven charges that had already been found to be without merit by Ms. Cusick—who had held a hearing—and that were withdrawn by Ms. Graham. Because defendants refused to accept the Court's invitation to voluntarily provide an administrative stay of termination and set a reasonable briefing and argument schedule, defendants have put themselves in a position where they are unable to refute these allegations. Because of the high likelihood that Mr. Barrow will prevail on his procedural due process claim under the facts as currently presented, this prong of the four-part test weighs heavily in favor of granting the TRO.

The Court also finds that Mr. Barrow will suffer imminent and irreparable harm if the Court does not grant his motion for a TRO. He will lose his job today without the benefit of any due process protections whatsoever. While this harm arguably may be insufficient to meet the heightened standard required to prove irreparable

harm in government employment termination cases for the purposes of a preliminary injunction, *see Sampson v. Murray,* 415 U.S. 61, 83–84, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), at the temporary restraining order stage the harm alleged is sufficient. Because all that is involved here is the preservation of the status quo for a short period of time until the parties can fully brief the merits and marshal the evidence, the possibility that government services will be disrupted is minimal and the concerns expressed by the Supreme Court in *Sampson* are only marginally implicated, if at all. The Court finds that Mr. Barrow will suffer irreparable harm without a TRO and must act now to prevent Mr. Barrow's immediate termination without the necessary procedural protections.

The balance of equities also favors granting plaintiff's motion for a temporary restraining order. Defendants fear that the TRO will disrupt governmental decisions to address problems with MRDDA, but the fact is that Mr. Barrow already is on administrative leave and has been for the last eleven months. The TRO would only preserve this state of affairs for a brief period of time until these issues can be fully briefed and the facts can be investigated and presented to the Court. If Mr. Barrow's version of the facts is incorrect, granting the TRO will allow defendants to fully investigate the matter and speak to persons within the District government who would be able to refute Mr. Barrow's assertions and persuade the Court that the fundamentals of due process and of the District's own regulations have not been completely ignored.

Finally, the Court concludes that the public interest weighs in favor of Mr. Barrow. While there is an interest in allowing the District's administrative scheme designed to deal with these types of employment issues to run its course without the intervention of the courts, there is a weightier interest in ensuring that the District provides its employees with the process required under the Constitution and the District of Columbia's own regulations. The District's alleged failure to comply with these requirements is so complete in this case that the public interest will best be served by entering a temporary restraining order.

SO ORDERED.